547 So.2d 90 (1989)
Mildred I. LOWMAN
v.
PIEDMONT EXECUTIVE SHIRT MANUFACTURING COMPANY and Carol Hart.
87-683.
Supreme Court of Alabama.
June 2, 1989.
*91 Jake B. Mathews, Jr. of Merrill, Merrill, Mathews & Allen, Anniston, for appellant.
Jerry B. Oglesby of Sides, Oglesby, Held & Dick, Anniston, for appellees.
PER CURIAM.
Ms. Mildred Lowman appeals from a summary judgment in favor of the defendants, Piedmont Executive Shirt Manufacturing Company ("Piedmont") and Ms. Carol Hart, in Lowman's action based on alleged fraud, conspiracy to defraud, and outrage. We affirm in part; reverse in part; and remand.
On June 21, 1985, Ms. Lowman sustained a back injury while working for Piedmont, and in July she filed a workmen's compensation *92 claim. Ms. Hart, a co-employee, processed Ms. Lowman's claim. Piedmont's insurance carrier began paying Ms. Lowman's benefits for a temporary total disability sometime in October. She is no longer receiving benefits.
In 1986, Ms. Lowman brought this action against Piedmont and Ms. Hart, seeking damages for fraud, conspiracy to defraud, and outrage. She predicated these tort claims on the alleged mishandling of her workmen's compensation claim. In her complaint, Ms. Lowman also included a claim for further workmen's compensation benefits, alleging that her disability had become permanent.
The trial court severed the workmen's compensation claim from the other claims, and Piedmont and Ms. Hart moved for summary judgment as to the tort claims.
The facts most favorable to Ms. Lowman show that Ms. Hart was aware that Ms. Lowman had been injured on the job, having been advised of this by Ms. Lowman's supervisors and by Ms. Lowman herself on the day the injury occurred. Ms. Hart, however, refused to process Ms. Lowman's claim and, instead, told Ms. Lowman to fill out another claim form and to state that she had been injured at home. Several days later, Ms. Hart visited a hospitalized Ms. Lowman and "threatened" Ms. Lowman with being "stuck with a big [medical] bill" if Ms. Lowman did not file her disability claim as for an off-the-job injury.
The trial court granted the defendants' motion for summary judgment and made the judgment final pursuant to Rule 54(b), A.R.Civ.P. Ms. Lowman appeals from this judgment, arguing that the exclusive remedy provisions of the Alabama Workmen's Compensation Act do not bar her tort claims and that the defendants' handling of her workmen's compensation claim constituted legal misrepresentation and outrageous conduct.
Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P.; Fountain v. Phillips, 404 So.2d 614 (Ala. 1981).
Appellees make two arguments. First, citing Waldon v. Hartford Ins. Group, 435 So.2d 1271 (Ala.1983), and Garnett v. Neumann, 507 So.2d 496 (Ala.1987), they argue that Ms. Lowman's fraud claim is barred by the exclusivity provisions of the Act. Alabama Code 1975, §§ 25-5-11, -52, -53, and -59. Second, appellees contend that there is no evidence tending to show that their conduct was outrageous under the standard set out in American Road Service Co. v. Inmon, 394 So.2d 361 (Ala. 1980). We agree with the appellees with respect to the claim based on the tort of outrage; we disagree with respect to the claim based on fraud. Therefore, we affirm in part and reverse in part.
The main issue here presented is how far the exclusivity provisions of the Workmen's Compensation Act extend. After examining the relevant statutes and case law, we hold that the exclusive remedy provisions were not designed to shield an employer or its insurer from the entire field of tort law. These provisions apply only to limit the liability of an employer or its insurer to the statutorily prescribed claims for job-related injuries.
Section 25-5-51 restricts the coverage of the Act to
"every case of personal injury or death of [an] employee caused by an accident arising out of and in the course of his employment."
Appellate decisions interpreting this section have clarified the requirements for falling under the coverage of this Act:
"We note at the outset, however, that in order for an accident or death to be compensable under the Workmen's Compensation Act, the following two requirements must be met: (1) the accident or death must arise out of the employment and (2) the accident or death must occur in the course of employment. McKnight v. Consolidated Concrete Co., 279 Ala. 430, 186 So.2d 144 (1966); Anderson v. Custom Caterers, Inc., 279 Ala. 360, 185 So.2d 383 (1966)." *93 Slimfold Mfg. Co. v. Martin, 417 So.2d 199, 200 (Ala.Civ.App.1981), writ quashed, 417 So.2d 203 (Ala.1982).
"But it is usually said that the phrase `arise out of' employment refers to employment as the cause and source of the accident.... We have said that the phrase `in the course of his employment' refers to the time, place and circumstances under which the accident took place. An injury to an employee arises in the course of his employment when it occurs within the period of his employment, at the place where he may reasonably be and while he is reasonably fulfilling the duties of his employment or engaged in some incident to it."
Massey v. United States Steel Corp., 264 Ala. 227, 230, 86 So.2d 375, 378 (1955) (quoted as authority in Lauderdale County Coop., Inc. v. Shook, 376 So.2d 199, 201 (Ala.Civ.App.), cert. denied, 376 So.2d 202 (Ala.1979)).
It logically follows that if an accident is not compensable because it is outside the coverage of the Act, then the exclusive remedy provisions of the Act are also inapplicable. Thus, an employer is protected from tort liability only as to injuries expressly covered by the language of the Act. In discussing this issue, Professor Larson has stated:
"If ... the exclusiveness defense is a `part of the quid pro quo by which the sacrifices and gains of employees and employers are to some extent put in balance' it ought logically to follow that the employer should be spared damage liability only when compensation liability has actually been provided in its place, or, to state the matter from the employee's point of view, rights of action for damages should not be deemed taken away except when something of value has been put in their place.
"A distinction must be drawn, however, between an injury which does not come within the fundamental coverage provisions of the act, and an injury which is in itself covered but for which, under the facts of the particular case, no compensation is payable. In the former class are, of course, all the cases in which the relation of employment did not exist, or in which plaintiff or his employer was within an excluded category, or in which there was no `injury by accident arising out of and in the course of the employment.'"
2A A. Larson, The Law of Workmen's Compensation, § 65.40, at p. 12-41-42 (1988).
Such a position is clearly in line with prior decisions of the Alabama appellate courts:
"The Alabama Workmen's Compensation Act makes it clear that it is an exclusive remedy only in situations where an employee is suing his employer for injury in the course of his employment. See, Ala.Code 1975, §§ 25-5-51, -53; Owens v. Ward, 49 Ala.App. 293, 271 So.2d 251 (1972). In order to come within the terms of the Act, and, therefore, have liability limited to the benefits paid thereunder, it is essential that the person seeking to limit the remedy of the injured party be in an employer-employee relationship with that party."
Kilgore v. C.G. Canter, Jr. & Assoc., 396 So.2d 60, 63 (Ala.1981). See, also, Gentry v. Swann Chemical Co., 234 Ala. 313, 174 So. 530 (1937).
Having determined that the exclusivity provisions of the Act do not afford protection for injuries not caused by a jobrelated accident, we must now apply this rule to the facts of the present case. The allegedly tortious conduct in question occurred while Ms. Lowman was hospitalized as a result of the initial injury to her back. Undoubtedly, this tortious conduct is not an "accident" compensable under workmen's compensation. The relationship between the original accident, which led to Ms. Lowman's hospitalization, and the subsequent actions of Piedmont and Ms. Hart, which are the subject matter of this action, is entirely too tenuous to bring the later activities under the coverage of workmen's compensation. Professor Larson has discussed such a "boot-strapping" approach and concluded that it is untenable:

*94 "To say that the second injury was only an aggravation or extension of the first, because the investigation was related to the first injury, one would have to accept a kind of but-for theory that could lead to preposterous results."
2A A. Larson, The Law of Workmen's Compensation, § 68.34(b), at p. 13-123 (1988). Because the actions of Piedmont and Ms. Hart are not covered by workmen's compensation, the exclusivity provisions of the Act are irrelevant to the present causes of action. See Brazier v. Travelers Ins. Co., 602 F.Supp. 541 (N.D. Ga.1984), citing Reed v. Hartford Accident & Indemnity Co., 367 F.Supp. 134 (E.D.Pa. 1973).
While recognizing that a cause of action for fraud is not prohibited by the exclusivity provisions of the Act, we are at the same time compelled to emphasize that a mere delay in payment of workmen's compensation benefits is not actionable as a separate tort claim. The penalty for untimely payment of workmen's compensation benefits is provided in § 25-5-59. Indeed, under the provisions of § 25-5-59, it is not necessary to allege or prove any element beyond the statutorily proscribed delay in payment of benefits, in order to recover the prescribed penalty. Again, we agree with the reasoning of Professor Larson:
"It seems clear that a compensation claimant cannot transform a simple delay in payments into an actionable tort by merely invoking the magic words `fraudulent, deceitful and intentional' or `intentional infliction of emotional distress' or `outrageous' conduct in his complaint. The temptation to shatter the exclusiveness principle by reaching for the tort weapon whenever there is a delay in payments or a termination of treatment is all too obvious, and awareness of this possibility has undoubtedly been one reason for the reluctance of courts to recognize this tort except in cases of egregious cruelty or venality."
2A A. Larson, The Law of Workmen's Compensation, § 68.34(c), at p. 13-145 (1988). See, also, Zurich Ins. Co. v. Mitchell, 712 S.W.2d 340 (Ky.1986); and Aetna Cas. & Sur. Co. v. Davis, 253 Ga. 376, 320 S.E.2d 368 (1984).
We cite with approval the court's reasoning in Carpentino v. Transport Ins. Co., 609 F.Supp. 556 (D.C.Conn.1985), a case similar to the instant appeal. Although Carpentino dealt with recovery for the "bad faith" conduct of the employer's insurer, the reasoning in that case is nonetheless applicable here:
"First, the Act speaks only to compensation for personal injury or death `arising out' of `employment.' It does not purport to provide redress for an otherwise cognizable tort that occurs outside the `natural and necessary incident or consequence of the employment,' Dennison v. Connecticut Good Humor, Inc., 130 Conn. 8, 10-11, 31 A.2d 332 (1943), nor does it authorize damages for a wrong to an employee unless `it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment....' David v. Goldie Motors, Inc., 129 Conn. 240, 242, 27 A.2d 164 (1942)....
"Second, the Act should not be an impervious barrier, insulating a wrongdoer from the payment of just and fair damages for intentional tortious acts only very tenuously related to workplace accidents. The public interest requires that wrongs be redressed, that unlawful conduct be discouraged and punished, and that an innocent victim be compensated for his injuries.
"[The third point deals with a statutory scheme which is not applicable to the present case.]
"Fourth, it is questionable whether an `exclusivity' provision in the Act can be constitutionally sustained if it results in an aggrieved person's being deprived of his due process rights to full redress for another's willful misconduct. Finally, the Court is not persuaded that the effect of its holding will open the floodgates to lawsuits against insurers by every injured employee who may be dissatisfied with the processing or the amount of his compensation benefits. Moreover, *95 prompt resolution of the meritless action is readily available by a motion for summary judgment."
Carpentino, 609 F.Supp. at 562.
Because, by this opinion, we recognize that intentional tortious conduct (i.e., intentional fraud) committed beyond the bounds of the employer's proper role is actionable, we deem it appropriate to address the standard of proof to be applied in determining whether a claim is due to be presented to a jury. In order to insure against borderline or frivolous claims, we believe, in view of the exclusivity clause, that a plaintiff, in order to go to the jury on a claim, must make a stronger showing than that required by the "substantial evidence rule" as it applies to the establishment of jury issues in regard to tort claims generally. See Code 1975, § 12-21-12. Therefore, we hold that in regard to a fraud claim against an employer, a fellow employee, or an employer's insurer, in order to present a claim to the jury, the plaintiff must present evidence that, if accepted and believed by the jury, would qualify as clear and convincing proof of fraud.
Although Ms. Lowman makes a persuasive argument in support of her outrage claim, we believe the totality of the circumstances, as revealed by the record, more clearly presents a factual issue on the fraud claim. The fact that Ms. Hart (according to Ms. Lowman) chose to make the misrepresentation of coverage to Ms. Lowman while she was hospitalized and thus was more acutely concerned about the payment of her hospital expenses, lends considerable weight to Ms. Lowman's "outrage" contention. Nonetheless, in carving out this exception for allowing intentional tort claims against the employer and fellow employees, we are constrained, in accomodation to the exclusivity provisions of the Act, to rule out all questionable claims. Moreover, all of Ms. Lowman's claimed damages are fully recoverable under her intentional fraud claim, if her evidence in support thereof is believed by the factfinder.
Our recognition of liability for fraudulent or outrageous conduct, which falls outside the scope of the workmen's compensation coverage, is in keeping with the majority of the courts of other jurisdictions that have dealt with this issue. See Annot., 8 A.L. R.4th 902 (1981). For an excellent discussion of intentional torts generally, which are not subject to the exclusivity defense, see Stafford v. Westchester Fire Ins. Co. of New York, 526 P.2d 37 (Alaska 1974); and 2A A. Larson, The Law of Workmen's Compensation, § 68.34(c). See, also, Note, "Testing the Exclusivity Provision of the Alabama Workmen's Compensation Act," 11 Am.J.Trial Ad. 121 (1987); and Comment, "Exceptions to the Exclusive Remedy Requirements of Workers' Compensation Statutes," 96 Harv.L.R. 1641 (1983).
To the extent that Glenn v. Vulcan Materials Co., 534 So.2d 598 (Ala.1988); Garnett v. Neumann, 507 So.2d 496 (Ala.1987); Moore v. Liberty Mutual Ins. Co., 468 So.2d 122 (Ala.1985); Garvin v. Shewbart, 442 So.2d 80 (Ala.1983); Waldon v. Hartford Ins. Group, 435 So.2d 1271 (Ala.1983), and other cases may be interpreted as rejecting claims for intentional fraud, as a matter of law, those cases are overruled.
The summary judgment is affirmed as to Ms. Lowman's claim based upon the tort of outrage, although such a claim is not barred as a matter of law under all circumstances. Ex parte Jackson, 485 So.2d 1116 (Ala.1986), relying on Garvin, supra. But, because the record does not contain sufficient evidence to indicate that the defendants' actions in handling Ms. Lowman's claim were "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." American Road Service Co. v. Inmon, 394 So.2d at 365; and Nabors v. St. Paul Ins. Co., 489 So.2d 573 (Ala.1986), summary judgment in favor of Piedmont and Ms. Hart was proper on the tort of outrage claim.
For the foregoing reasons, the judgment on the outrage claim is affirmed, and the judgment on the fraud claim is reversed.
*96 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and JONES, ALMON, SHORES, ADAMS and KENNEDY, JJ., concur.
MADDOX, HOUSTON and STEAGALL, JJ., concur in part and dissent in part.
HOUSTON, Justice (concurring in part; dissenting in part).
I agree that summary judgment for Piedmont and Ms. Hart was proper on the tort of outrage claim. I dissent from the majority's opinion reversing the summary judgment as to the fraud count.
I authored Glenn v. Vulcan Materials Co., 534 So.2d 598 (Ala.1988), in which eight Justices concurred and one did not vote. This opinion was released on September 30, 1988. While researching to write Glenn, I questioned whether damages for fraudulent representations were "damages for any injury or death occasioned by any accident proximately resulting from and while engaged in the actual performance of the duties of his employment," within the meaning of those words in Alabama Code 1975, § 25-5-52, and within the meaning of the words "on account of said injury, loss of services or death" in § 25-5-53. Glenn was based upon the precedent of opinions (Moore v. Liberty Mutual Insurance Co., 468 So.2d 122 (Ala.1985); Waldon v. Hartford Insurance Group, 435 So.2d 1271 (Ala.1983); and Garvin v. Shewbart, 442 So.2d 80 (Ala. 1983)) decided before I was a member of this Court, in which every Justice on this Court at the time Glenn was released, except Justice Steagall and me, had concurred. I concluded that there was support for the theory that the Legislature intended for the remedies provided by the Workmen's Compensation Act to cover all alleged civil wrongs for the handling, processing, and payment of workmen's compensation claims except those acts that were "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society" (the tort of outrage). American Road Service Co. v. Inmon, 394 So.2d 361, 365 (Ala.1980). Before writing Glenn, I was convinced that the ratio decidendi of those prior decisions "would hypothetically be consented to today by the conscience and the feeling of justice of the majority of all those whose obedience is required by the rule of law on which the ratio decidendi of [those] prior decision[s] was logically based," Laun, Stare Decisis, 25 Va.L.Rev. 12, 22 (1938). I am convinced of that today; therefore, I will not depart from the doctrine of stare decisis and overrule two opinions of this Court that are less than six years old; one that is less than five years old; Garnett v. Neumann, 507 So.2d 496 (Ala.1987) (bad faith), which is less than three years old; and one opinion that is less than eight months old, to follow a 1974 opinion of four members of the Supreme Court of Alaska and a 1985 opinion of a federal district court judge in Connecticut. Stare decisis should be made of sterner stuff than the mere fabric of this year's fashion.
MADDOX and STEAGALL, JJ., concur.