This case presents the question whether the trial court erred in entering summary judgment against the appellant on his complaint alleging the tort of outrageous conduct.
Even though the parties briefed and argued the issue of whether plaintiff's complaint was preempted by § 301, Labor Management Relations Act, 29 U.S.C. § 185 (because he had previously filed a grievance under that Act), we will not address that issue because our holding on the summary judgment issue is dispositive.
On October 18, 1979, Willis Lee Daniel, an appliance repairman with Alabama Power Company ("APCo"), allegedly received an on-the-job injury to his lower back while removing an oven from a cabinet. As a result of the alleged injury, Daniel was placed on sick leave by APCo. An examination by an APCo physician revealed no apparent lower back injury sustained by Daniel. Despite the APCo physician's report, Daniel insisted that he was experiencing severe lower back pain. On June 23, 1980, Daniel returned to work and was assigned to a clerical position. Daniel was told by the APCo physician not to lift any item heavier than 25 pounds.
Daniel asserted that while working at his clerical position at APCo, he was threatened by an APCo supervisor and was told by another APCo supervisor to quit "feigning" his lower back injury. On July 8, 1980, Daniel, complaining of severe lower back pain, was placed on sick leave, vacation leave, and then extended sick leave. After Daniel had exhausted his APCo leave, on October 13, 1980, he was placed on personal leave through January 11, 1981.
On January 12, 1981, Daniel returned to work and accepted a bill collector's position with APCo. On January 14, after complaining to his supervisor that the walking involved with his new position aggravated his lower back pain, Daniel failed to report to work. On January 27, Daniel's union representative filed a grievance with APCo. In that grievance, Daniel complained that APCo had refused to pay its share of insurance premiums on him. On January 29, 1981, a second grievance was filed with APCo, alleging that Daniel had been placed in an incorrect pay category when he assumed his bill collector's position. On February 6, 1981, APCo notified Daniel that he had been discharged on that date for not *Page 164 
reporting to work. Finally, on February 13, 1981, Daniel filed a third grievance, complaining of his discharge. In that grievance, Daniel alleged that APCo had systematically attempted to deprive him of his insurance benefits and that APCo, through its employees, had continuously discriminated against him and coerced, threatened, and intimidated him and his family since his accident occurred. In a letter dated May 20, 1981, the union and APCo settled the three grievances lodged by Daniel's union representative. Under the settlement agreement, Daniel was reinstated with APCo and was placed on leave for long-term disability purposes effective July 23, 1980; also, APCo agreed to retroactively pay its share of the insurance premiums on Daniel that had not been paid when Daniel was placed on personal leave of absence from work on October 14, 1980, through January 11, 1981. Despite that settlement, both Daniel and his union representative declared that it did not "settle" Daniel's outrage suit against the company, which had previously been filed.
On December 15, 1980, Daniel had filed an action against APCo and APCo's insurance company, Protective Life Insurance Company. In that complaint, Daniel alleged that APCo and its insurer had conspired to deny him his insurance benefits after his accident. On May 28, 1981, Daniel filed an amended complaint that asserted his claim against APCo based on alleged outrageous conduct. After filing three unsuccessful motions for summary judgment, APCo filed a fourth motion for summary judgment on April 22, 1988, which the trial court granted on August 17, 1988. In its order, the trial court stated that Daniel's claims were preempted by 29 U.S.C. § 185 and that, as a matter of law, he had not presented even a scintilla of evidence supporting his tort of outrageous conduct claim.
Daniel asserts that there were questions of material fact as to whether APCo, through its representatives, had committed the tort of outrageous conduct against him. The standard for review of motions for summary judgment was stated by this Court inCabaniss v. Wilson, 501 So.2d 1177, 1182 (Ala. 1986):
 "The standard of review applicable to motions for summary judgment is well settled: A motion for summary judgment may be granted only when there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Fountain v. Phillips, 404 So.2d 614, 618 (Ala. 1981). Furthermore, all reasonable doubts concerning a genuine issue of material fact must be resolved against the moving party. Couch v. Dothan-Houston County Airport Authority, Inc., 435 So.2d 14 (Ala. 1983)."
Because Daniel filed his complaint before June 11, 1987, APCo's burden of proof on its motion for summary judgment is measured by the "scintilla rule," which requires a trial judge to deny a motion for summary judgment if there is a scintilla of evidence supporting the nonmovant's position. See Ala. Code 1975, § 12-21-12.
Applying the law relating to the tort of outrageous conduct to the present case, we find it clear that there was no genuine issue of material fact to be presented to a factfinder. In his deposition, Daniel testified concerning a number of circumstances that he maintains would create a genuine issue of material fact regarding his allegation of outrageous conduct. First, Daniel claims that while he was at work one of his superiors accused him of "feigning" his back injury. Furthermore, he claims that another supervisor at work challenged him to a fistfight. Finally, he claims that another supervisor ridiculed him at work by suggesting that he pull two tables together and lie upon them if his back pain became too severe.
This Court first recognized the tort of outrageous conduct inAmerican Road Serv. Co. v. Inmon, 394 So.2d 361 (Ala. 1980). In that case, this Court stated that in order for a plaintiff to establish the tort of outrageous conduct, the emotional distress to which the plaintiff is subjected must be so "extreme" that no reasonable person could be expected to endure it. "By extreme we refer to conduct so outrageous *Page 165 
in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Id. at 365.
In Inmon, this Court summarized the evidence presented by the plaintiff in that case, as follows:
 "Thus, the tendencies of Inmon's evidence showed that he had been harassed, investigated without cause, humiliated, accused of improper dealings, treated uncustomarily, and terminated without justification. His evidence also established emotional distress resulting in loss of weight and insomnia. It is sufficient here to state that the company's representatives testified that their investigation related to allegations of a 'kickback' scheme involving Inmon and Michael McCue, a claims supervisor in Baltimore. Inmon's honesty was also questioned through his relationship with a salvage buyer.
 "After considering the entire record, we have concluded that the conduct of American Road Service Company toward Inmon does not meet the requirements of the cause of action we have recognized above. There is no evidence upon which reasonable people could base the belief that the company intended to cause Inmon severe emotional distress. The Brady telephone conversations, for example, do not reveal any such intent, even though at one point, according to Inmon, Brady said that he had been told to wait until Sunday night to notify Inmon that he was to report to Detroit the next afternoon at 1:00 o'clock. Any resentment springing from such impersonal treatment is not the severe emotional distress contemplated by this tort."
394 So.2d at 367. In a few cases, this Court has recognized the statement of an actionable claim of outrageous conduct where the disputed conduct was "extreme" in nature. In Busby v.Truswal Systems Corp., 551 So.2d 322 (Ala. 1989), this Court held that a plant supervisor's persistent and calculated sexual harassment of his female employees at work presented evidence from which a jury could reasonably find the supervisor guilty of the tort of outrageous conduct. Also, in Whitt v. Hulsey,519 So.2d 901 (Ala. 1987), this Court stated that a landowner's deliberate use of a bulldozer so as to cause gravestones to be broken and pushed aside, presented evidence from which a jury could conclude that the landowner's behavior amounted to the tort of outrageous conduct, and in National Sec. Fire Cas.Co. v. Bowen, 447 So.2d 133 (Ala. 1983), this Court held that the use of threatening and assaultive behavior on the part of an insurance company's investigators against its insured and his family in an attempt to force the insured to drop his claim against the insurance company created the kind of "extreme" emotional distress in the insured that the tort of outrageous conduct was meant to address.
Because the tort of outrageous conduct carries punitive damages, "it is a limited remedy to be applied only in egregious circumstances." Busby, supra.
We have examined Daniel's evidence of APCo's alleged outrageous conduct — that one of its supervisors accused him of "feigning" his back injury, that one supervisor challenged him to a fistfight, and that another supervisor told him to lie upon two tables pushed together, if his back pain became too severe at work — and we hold that these alleged acts of misconduct do not represent the kind of "extreme" conduct that the tort of outrageous conduct was meant to remedy. In Lowmanv. Piedmont Executive Shirt Mfg. Co., 547 So.2d 90 (Ala. 1989), this Court held that despite a co-employee's awareness of a fellow employee's job-related injury, that co-employee's attempt to coerce the injured employee to allege that she was hurt off the job did not amount to conduct so extreme as to constitute the tort of outrageous conduct. Clearly, if the conduct in Lowman was not "outrageous," then how can Daniel's claims in this case be deemed to be "outrageous"? We hold, as a matter of law, that the alleged conduct was not so "extreme" as to constitute the tort of outrageous conduct; therefore, the summary *Page 166 
judgment in favor of APCo was not erroneous.
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
JONES, J., concurs in the result.