Jalone Gibson appeals from a summary judgment entered for the defendants, Southern Guaranty Insurance Company, Inc. ("SGI"), Med-Manage, Inc., and Roberta Shaw. We affirm.
Mr. Gibson was injured on the job while working for American Sign Company on May 11, 1989, when a falling ladder struck his head. SGI, the workers' compensation carrier for American Sign, hired Med-Manage to manage the medical aspects of Gibson's workers' compensation claim. Med-Manage assigned Roberta Shaw as Gibson's medical case coordinator. Gibson visited a series of physicians during his evaluation, treatment, and rehabilitation following his injury.[1]
Gibson sued on July 30, 1991, alleging the tort of outrageous conduct, bad faith, fraud, conspiracy, and negligence and wantonness in the manner in which the defendants had handled his need for psychological testing and treatment that arose out of his workplace injury. The trial court granted SGI's Rule 12(b)(6), A.R.Civ.P., motion to dismiss as to the bad faith and conspiracy claims, on September 20, 1991. SGI, Med-Manage, and Shaw each moved for a summary judgment. The trial court entered a summary judgment in favor of all defendants as to all remaining claims on September 14, 1992. Gibson appeals from that judgment.
The exclusivity provisions of the Alabama Workers' Compensation Act limit the liability of the workers' compensation insurer to those claims prescribed under the statute for job-related injuries. Lowman v. Piedmont ExecutiveShirt Mfg. Co., 547 So.2d 90, 92 (Ala. 1989). These exclusivity provisions, however, do not "shield an employer or its insurer from the entire field of tort law." Id. This Court has recognized that the intentional tort of outrageous conduct and the tort of intentional fraud are not barred by the exclusivity provisions of the Act and can exist in a workers' compensation setting. Id. at 95; Farley v. CNA Insurance Co., 576 So.2d 158,159 (Ala. 1991); Tittle v. Custard Ins. Adjusters,590 So.2d 880, 881 (Ala. 1991). Because Gibson's claims, other than those alleging intentional fraud and the tort of outrage, are barred by the exclusivity provisions of the Act, we affirm the summary judgment as to those claims.
Did the trial court err in entering the summary judgment on the outrageous conduct claim? The type of conduct that could give rise to liability for outrageous conduct is outlined in the seminal case of American Road Serv. Co. v. Inmon,394 So.2d 361, 365 (Ala. 1980). A person must "by extreme and outrageous conduct intentionally and recklessly cause severe emotional distress to another" to be liable for the tort of outrage. Id.
 "The emotional distress . . . must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."
Id. (citations omitted).
Gibson contends that the defendants' course of conduct in handling his medical treatment constitutes outrageous conduct. *Page 1067 
We disagree. The trial court must determine, in the first instance, whether recovery for outrageous conduct is warranted.Continental Casualty Ins. Co. v. McDonald, 567 So.2d 1208, 1221
(Ala. 1990), citing Inmon, supra, at 365. After carefully reviewing the evidence, we conclude that it does not meet the standard for outrageous conduct.
The record reveals that, in the course of evaluation and treatment for his injury, Gibson was referred to a multitude of physicians. Dr. Charles E. Herlihy, a psychiatrist, examined Gibson and, in February 1990, recommended that SGI approve neuropsychological evaluation and support therapy to assist in the treatment of depression and anxiety apparently caused by Gibson's injury. Due to a series of misunderstandings, delays, and breakdowns in communication, Gibson did not receive the neuropsychological evaluation until October 1990.
Shaw informed SGI that Gibson had told her on April 2, 1990, that he was no longer depressed and did not need to return to see Dr. Herlihy. Gibson later denied having told Shaw that he did not desire psychotherapy. Gibson was examined by a psychiatrist, Dr. Claude L. Brown, in October 1990. After a neuropsychological evaluation, Dr. Brown diagnosed Gibson as having mild somatization disorder and recommended that he return to light work and undergo supportive psychotherapy.[2]
SGI's claims adjuster, Virginia Farrior, informed Gibson's attorney in December 1990 that Gibson's future medical treatment would remain open, that psychotherapy was not pursued because Gibson had earlier stated he was not depressed and did not want to continue seeing Dr. Herlihy, and that SGI would provide psychotherapy treatment if Gibson so desired.
Gibson was not allowed to see the doctor of his choice, because SGI would pay only for his visits to those physicians approved by SGI. A workers' compensation insurer has a statutory right to select which physicians a claimant will receive coverage for, § 25-5-77; thus, in selecting Gibson's physicians, SGI was insisting upon its legal rights in a permissible way, and for doing so it is not liable in an action alleging outrageous conduct. Garvin v. Shewbart, 564 So.2d 428,429, 431 (Ala. 1990). Because the evidence tends to show that Gibson's difficulties in obtaining the medical care he desired were the result of ordinary delays, misunderstandings, and breakdowns in communication at least as much as it tends to show that his difficulties were due to any deliberate attempt by the defendants to deny him further medical care, the summary judgment is due to be affirmed as to the claim of outrageous conduct. Garvin, supra, at 431.
Did the trial court err in entering the summary judgment on the claim of intentional fraud? In order to overcome the defendants' prima facie showing that there was no genuine issue of material fact in regard to this claim and thereby send this claim to the jury, Gibson must present not just "substantial evidence," § 12-21-12(d), but "clear and convincing" evidence that the defendants intended to defraud him in their handling of his claim. Tittle, supra, at 881. We are mindful that, "in carving out this exception [to the Workers' Compensation Act] for allowing intentional tort claims . . ., we are constrained, in accommodation to the exclusivity provisions of the Act, to rule out all questionable claims." Lowman, supra, at 95. Although we must view the evidence in the light most favorable to Gibson, as the nonmovant, we cannot say that Gibson presented clear and convincing evidence that the defendants committed intentional fraud against him that would allow the case to go before a jury.
We further note that the alleged fraud concerned future acts, i.e., the intent of SGI to refuse future psychological treatment, and, thus, that Gibson must prove the elements of promissory fraud to withstand a motion for summary judgment. We do not find sufficient evidence that, at the time it made any alleged misrepresentations, SGI intended not to do the acts promised, and that the misrepresentations were made with the intent to deceive Gibson. See Vance v. Huff, 568 So.2d 745, 750
(Ala. 1990). In fact, SGI offered *Page 1068 
to provide Gibson with psychotherapy if he so desired, although the offer occurred nearly a year after such treatment was first recommended by Dr. Herlihy.
We must conclude also, then, that the court properly entered the summary judgment as to the fraud claim. The summary judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON, ADAMS, HOUSTON and STEAGALL, JJ., concur.
KENNEDY, J., concurs in part and dissents in part.
[1] Gibson's primary treating physician, Dr. William S. Fleet, determined that Gibson had reached maximum medical improvement, with a 5% permanent partial impairment because of cervical strain, before Gibson filed this action. Gibson returned to full-time work in May 1991.
[2] Somatization disorder occurs when a person converts emotional symptoms into physical complaints.