On January 31, 2004, Kenneth Douglas Painter was working within the line and scope of his employment as a maintenance mechanic for his employer, McWane Cast Iron Pipe Company ("McWane Pipe"), when he fell approximately 15 feet and landed on his head and left shoulder. It is undisputed that Painter fractured his left scapula in the fall and that he received treatment for this injury and was compensated pursuant to the Workers' Compensation Act, § 25-5-1 et seq., Ala. Code 1975. During the course of his treatment for the shoulder injury, Painter began to complain of symptoms relating to his lower back. McWane Pipe disputed whether Painter's lower-back symptoms were causally related to the workplace accident because he did not complain of lower-back symptoms until over a month after the accident had occurred. Painter was eventually diagnosed with a herniated disk in his lower back, and he underwent surgery to repair *Page 524 
the injured disk. Painter's treatment and surgery for the herniated disk were paid for by his private health-insurance carrier.
Painter returned to his employment with McWane Pipe in July 2004. On July 10, 2004, Painter brought a camera to work to take photographs of the area in which his accident had occurred. McWane Pipe had a written policy in effect that prohibited the use of cameras within the plant without the prior approval of management. Mark Phillips, McWane Pipe's personnel manager, received an anonymous tip that Painter had been taking photographs inside the plant. Phillips confronted Painter and asked him if he had a camera in his possession; Painter denied that he had a camera. However, Phillips noticed the top of a camera in Painter's jacket pocket and informed Painter that he had seen the camera. At that point Painter requested to see a union representative, and a union representative was summoned.[1]
Phillips explained to Painter and the union representative that Phillips was entitled to have the camera and film turned over to him pursuant to McWane Pipe's policy prohibiting cameras on the premises without prior approval. Painter questioned why he should turn over the camera and film, stating that "he would be terminated anyway." Phillips responded that he "would consider being lenient or recommending leniency" if Painter turned the camera and film over to him. Painter and the union representative then had a private discussion, after which Painter returned to Phillips; he showed him the film, which he had removed from the camera and torn into pieces. Painter, however, refused to turn the camera over to Phillips.
Phillips took Painter off the work schedule and sent him home. On July 12, 2004, Painter filed a grievance report with the local union against McWane Pipe, objecting to being sent home based on his possession of a camera because, he says, the employee handbook did not state that being in possession of a camera was a violation of company policy. Painter also alleged in the grievance that he was being retaliated against for having filed a worker's compensation claim and that "Phillips is looking for any reason to fire me." On July 15, 2004, Painter was notified by letter that he was being suspended for five days subject to discharge for violating the camera policy and for dishonesty. Painter was eventually discharged from his employment with McWane Pipe.
Painter sued McWane Pipe on August 5, 2004, seeking to recover worker's compensation benefits for the lower-back injury he allegedly sustained in his fall on January 31, 2004. Painter also asserted a claim of retaliatory discharge pursuant to § 25-5-11.1, Ala. Code 1975, alleging that he had been terminated from his employment with McWane Pipe solely because he had filed a worker's compensation claim. McWane Pipe answered the complaint and moved the trial court to sever the worker's compensation claim from the retaliatory-discharge claim. On March 4, 2005, the trial court entered an order treating McWane Pipe's motion to sever as a motion to bifurcate and ordered that the retaliatory-discharge claim be set for trial after the disposition of the worker's compensation claim.
In the meantime, the grievance Painter had filed against McWane Pipe with the union was submitted to arbitration for hearing on January 31, 2005, in accordance with the collective-bargaining agreement between the union and McWane Pipe. On May 10, 2005, the arbitrator entered an order denying Painter's grievance and *Page 525 
holding that the termination of Painter's employment was for "just cause." The arbitrator made the following findings:
 "There is no evidence to support the allegation that at the time of concern, [McWane Pipe] treated workers' compensation claimants differently from other employees. During his testimony, [Painter] acknowledged that his worker's compensation suit [seeking benefits for his lower-back injury] was filed after his termination. There simply are no facts on which the Arbitrator can base a conclusion that [Painter's] termination was retaliatory in nature.
 "[Painter] acknowledged that Phillips wanted the camera as it was, yet refused to give it to him without destruction of the film first. The fact that [Painter] was acting on the advice of another cannot absolve him of ultimate responsibility for his own actions. Taken together, the facts in this case show that [Painter] violated [McWane Pipe] rules and was dishonest within the meaning of Section 9.1 of the collective bargaining agreement."
Painter did not appeal the arbitrator's decision.
On May 19, 2005, McWane Pipe amended its answer to assert the doctrine of collateral estoppel as a defense to Painter's retaliatory-discharge claim, stating that the retaliatory-discharge claim could not be relitigated because it had been presented to arbitration and the arbitrator had determined that Painter's employment was terminated for violating company policies and for dishonesty, and not because he had filed a worker's compensation claim. On October 5, 2005, McWane Pipe moved for a summary judgment as to Painter's retaliatory-discharge claim, arguing that the claim was barred by the doctrine of collateral estoppel; that McWane Pipe had established a separate and independent reason for terminating Painter's employment, other than the fact that Painter had filed a worker's compensation claim; and that Painter cannot establish that the termination of his employment was based solely on his having filed a worker's compensation claim.
On October 14, 2005, Painter and McWane Pipe executed a "Petition and Settlement Agreement" to settle Painter's worker's compensation claim against McWane Pipe for injury to his lower back arising out of the accident occurring on January 31, 2004. The parties agreed to settle for $23,500 the dispute over Painter's alleged lower-back injury; whether McWane Pipe was responsible for the payment of medical expenses relating to the lower-back injury; and the degree of physical impairment, if any, resulting from the lower-back injury. The settlement agreement expressly provided that Painter's retaliatory-discharge claim was not subject to the settlement and release and that it remained subject to further judicial proceedings. The trial court, on October 14, 2005, entered an order approving the settlement agreement, thereby disposing of Painter's worker's compensation claim. The trial court's order approving the settlement agreement released McWane Pipe from all claims arising out of the January 31, 2004, accident and preserved to Painter his retaliatory-discharge claim.
On November 10, 2005, Painter both moved the trial court to strike McWane Pipe's summary-judgment motion and responded to the summary-judgment motion. Painter argued that McWane Pipe was estopped from relying on the arbitration proceeding as its basis for the defense of collateral estoppel because, he says, McWane Pipe violated Rule 4.2, Ala. R. Prof. Cond., which provides: "In representing a client, a lawyer shall not communicate about the subject of the representation *Page 526 
with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." Specifically, Painter argued that McWane Pipe's counsel, Sydney Frazier, questioned him regarding the retaliatory-discharge claim during the arbitration proceedings when Frazier knew that Painter was represented by counsel, who was not present during the arbitration proceedings because he had been advised by McWane Pipe that he would not need counsel during the arbitration proceedings. Painter also argued that McWane Pipe was estopped from relying on the collateral estoppel defense because, he argued, he was denied an adequate opportunity to litigate the retaliatory-discharge claim during the arbitration proceedings. McWane Pipe responded on November 16, 2005, to Painter's motion to strike its summary-judgment motion, contending that a union member's personal attorney is not permitted to participate in the union's arbitration proceedings and, further, that Painter was represented during the arbitration proceedings by a union representative.
On November 29, 2005, Painter amended his complaint to allege two counts of fraud. Painter alleged in amended count III that Phillips fraudulently represented to him that he would not be discharged for violating the policy against having a camera on the premises if he turned the camera and film over to Phillips and that he relied on that representation when he relinquished the film to Phillips. Painter alleged in amended count IV that McWane Pipe fraudulently attempted to violate the Workers' Compensation Act by attempting to have him accept payments from a disability-insurance plan instead of benefits under the Act; by requesting that Painter provide false statements indicating that his back injury was not work-related; by refusing to provide worker's compensation benefits and treatment for his back injury although McWane Pipe knew that the injury was work-related; and that out of duress and necessity he was forced to submit the medical expenses associated with the treatment of his back injury to his private health-insurance carrier.
On December 12, 2005, McWane Pipe moved to dismiss Painter's amended complaint, arguing that count III raised an issue that had been presented to and rejected by the arbitrator during the arbitration proceedings and was thus subject to the same collateral estoppel defense argued by McWane Pipe in its summary-judgment motion. Further, McWane Pipe argued that count IV of the amended complaint failed to state a claim for which relief could be granted and also that it attempted to assert claims that had been released by the parties' settlement of Painter's worker's compensation claim.
On December 29, 2005, the trial court granted McWane Pipe's motion for a summary judgment as to Painter's retaliatory-discharge claim. The trial court certified the judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. The trial court treated McWane Pipe's motion to dismiss Painter's amended complaint as a motion for a summary judgment and, on January 23, 2006, entered an amended summary judgment in favor of McWane Pipe on Painter's amended fraud counts. The trial court made the following findings:
 "Given the findings and award of the Arbitrator, [Painter's] claim in Count III is barred by the doctrines of res judicata and collateral estoppel. [Painter's] claims in Count IV relate to [McWane Pipe's] denial of workers' compensation benefits which were expressly resolved in the Workers' Compensation Settlement Agreement between the parties which was approved by a judge of the *Page 527 
circuit court and is in the record. Moreover, there is no cause of action for `attempted fraud.'"
Painter filed his notice of appeal on March 3, 2006.
 Standard of Review
In reviewing a ruling on a motion for a summary judgment, we use the same standard the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden then shifts to the nonmovant to present substantial evidence creating such an issue.Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life AssuranceCo. of Florida, 547 So.2d 870, 871 (Ala. 1989). This Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc.,564 So.2d 412 (Ala. 1990).
 Discussion
Painter has not presented an argument on appeal as to the fraud claim asserted in count III of the amended complaint. Because Painter has abandoned the fraud claim asserted in count III, we affirm the trial court's judgment as to that count. SeeTucker v. Cullman-Jefferson Counties Gas Dist.,864 So.2d 317 (Ala. 2003).
Painter argues that the trial court erred in entering a summary judgment as to the fraud claim asserted in count IV of the amended complaint and cites Lowman v. Piedmont ExecutiveShirt Manufacturing Co., 547 So.2d 90 (Ala. 1989), in support of that argument. At the heart of count IV is Painter's claim that McWane Pipe refused him worker's compensation benefits for his back injury when it knew that the injury was caused by the work-related fall and that he was thus required to process the claim through his private health-insurance carrier. Painter also claims that McWane Pipe committed fraud by asking him to collect disability benefits by signing documents indicating that his lower-back injury was not work-related.
In Lowman, the employee, Lowman, sued Carol Hart and Piedmont alleging fraud, conspiracy to defraud, and the tort of outrage based on the alleged mishandling of her worker's compensation claim by Hart. The trial court entered a summary judgment in favor of Hart and Piedmont. This Court noted the following facts on appeal:
 "The facts most favorable to Ms. Lowman show that Ms. Hart was aware that Ms. Lowman had been injured on the job, having been advised of this by Ms. Lowman's supervisors and by Ms. Lowman herself on the day the injury occurred. Ms. Hart, however, refused to process Ms. Lowman's claim and, instead, told Ms. Lowman to fill out another claim form and to state that she had been injured at home. Several days later, Ms. Hart visited a hospitalized Ms. Lowman and `threatened' Ms. Lowman with being `stuck with a big [medical] bill' if Ms. Lowman did not file her disability claim as for an off-the-job injury."
547 So.2d at 92. Lowman argued on appeal that her tort claims were not barred *Page 528 
by the exclusivity provisions of the Workers' Compensation Act and that the defendants' handling of her worker's compensation claim constituted misrepresentation and the tort of outrage. This Court held that the exclusivity provisions of the Act "were not designed to shield an employer or its insurer from the entire field of tort law" and that those provisions "apply only to limit the liability of an employer or its insurer to the statutorily prescribed claims for job-related injuries." 547 So.2d at 92. Thus, Lowman's fraud, conspiracy, and tort-of-outrage causes of action were not prohibited by the exclusivity provisions of the Workers' Compensation Act, because of Piedmont and Hart's actions in allegedly threatening her if she did not file her claim as a disability claim for an off-the-job injury, which did not constitute an "accident" compensable under the Act. This Court concluded that the factual allegations, even if true, did not rise to the level of outrageous conduct and affirmed the summary judgment as to that claim; however, this Court concluded that a question of fact existed as to the fraud claim and reversed the summary judgment as to that claim. Id.
In Hobbs v. Alabama Power Co., 775 So.2d 783
(Ala. 2000), the employee, Hobbs, was injured during the course of her employment with Alabama Power Company and was diagnosed with lumbar strain and spinal stenosis, a degenerative disease. Hobbs's treating physician determined that the spinal stenosis was not work-related. Hobbs eventually had surgery to treat the spinal stenosis, and Alabama Power informed Hobbs that its workers' compensation insurance carrier would not pay for the surgery because, it said, the injury did not arise out of Hobbs's employment with Alabama Power. Hobbs filed claims for her back surgery with her private health-insurance carrier.
Hobbs sued Alabama Power, alleging that it had fraudulently required her to seek medical coverage from her private health-insurance carrier; had represented to her that her injuries were not covered by workers' compensation and were covered by her private health-insurance carrier; and had represented to her that her private health-insurance carrier should provide care and treatment for injuries she sustained on the job, when Alabama Power knew or should have known that the injuries were work-related.
In affirming a summary judgment in favor of Alabama Power, this Court distinguished Lowman as follows:
 "Unlike the employer in Lowman, APCo [Alabama Power Company] never, with information to the contrary, insisted that the injury occurred away from the job. It never instructed Hobbs to complete a false claim, and it never preyed upon Hobbs with threats of financial ruin while she was in a weakened position. Even viewing the evidence in the light most favorable to Hobbs, we cannot say that APCo, by requiring Hobbs to submit her medical expenses associated with spinal stenosis to her private health-insurance carrier and by denying her request for coverage under APCo's workers' compensation plan, was guilty of conduct `beyond the bounds of the employer's proper role.' See Lowman, 547 So.2d at 95. In Hobbs's case, APCo offered to pay, and in fact did pay, her medical expenses associated with the lumbar strain that resulted from the January 3, 1996, on-the-job accident. This action was within the realm of APCo's proper role as an employer."
775 So.2d at 788.
The facts of this case are distinguishable from the facts set forth in Lowman; they are more akin to those in *Page 529 Hobbs. Here, McWane Pipe acknowledged that Painter's accident occurred and admitted that he suffered an injury to his left scapula as the result of that accident. McWane Pipe disputed the compensability of the lower-back injury because it was not asserted until over a month after the accident had occurred. We cannot say that under these circumstances the offer to provide disability and medical benefits rather than worker's compensation benefits constitutes conduct "beyond the bounds of the employer's proper role."Lowman, 547 So.2d at 95.
In addition to our holding that Painter has failed to establish a claim of fraud pursuant to Lowman, we further conclude that Painter's claims asserted in count IV are barred by the settlement agreement entered into with McWane Pipe to settle Painter's worker's compensation claim. The settlement agreement stated that it specifically encompassed
 "such disputes including, but not limited to, (a) whether the low back injury being claimed by Painter, which resulted in a surgical procedure to repair a herniated disc, was caused by the Accident, (b) whether McWane is responsible for payment of medical expenses relating to the low back injury and disc repair surgery, and (c) the extent of Painter's physical impairment or disability, or vocational impairment or lost earning capacity, if any, resulting from the Accident and the Injuries."
The trial court's order approving the settlement agreement specifically provides:
 "McWane Pipe . . . shall be released from any and all causes of action, rights of or for causes of action, claims and liabilities of whatsoever kind, character, and description, of Painter . . . including, but not limited to, claims on account of or arising out of the January 31, 2001)., accident made the basis of this action and/or Painter's shoulder and alleged low back injuries and disability, if any, resulting therefrom."
(Emphasis added.) Painter's claims asserted in count IV are clearly encompassed by the settlement agreement and the order approving the settlement agreement and, therefore, are barred from further litigation. Accordingly, the summary judgment entered as to count IV of the amended complaint is due to be affirmed.
Painter next argues that the trial court erred in entering a summary judgment on his retaliatory-discharge claim based on the doctrine of collateral estoppel. Specifically, he contends that he was denied an adequate opportunity to litigate the issue in the arbitration proceeding because, he says, he was not permitted to have his counsel present, although McWane Pipe's counsel was present and thoroughly examined him.
Rule 4(a)(1), Ala. R.App. P., provides, in part, as follows:
 "(1) Except as otherwise provided herein, in all cases in which an appeal is permitted by law as of right to the supreme court or to a court of appeals, the notice of appeal required by Rule 3[, Ala. R.App. P.,] shall be filed with the clerk of the trial court within 42 days (6 weeks) of the date of the entry of the judgment or order appealed from. . . ."
The filing of a timely notice of appeal is a jurisdictional act. Lewis v. State, 463 So.2d 154, 155 (Ala. 1985). "A judgment certified by a trial court pursuant to Rule 54(b) is a final appealable judgment; the certification triggers the running of the 42-day appeal period." 463 So.2d at 155.
In this case the trial court, on December 29, 2005, entered a summary judgment in favor of McWane Pipe on Painter's retaliatory-discharge claim and certified that judgment as final pursuant to Rule *Page 530 
54(b), Ala. R. Civ. P. The certification triggered the running of the 42-day period in which to file an appeal. The amended summary-judgment order entered by the trial court on January 23, 2006, did not amend or alter the final judgment on the retaliatory-discharge claim because the trial court addressed only the amended fraud claims. Thus, the amended summary-judgment order did not extend the 42-day period Painter had to file his notice of appeal as to the retaliatory-discharge claim, and Painter's notice of appeal filed on March 3, 2006, was untimely as to that claim. Because Painter's notice of appeal was untimely as to the retaliatory-discharge claim, this Court is without jurisdiction to consider those issues raised on appeal as to that claim.Id.; Greystone Close v. Fidelity Guar. Ins. Co.,664 So.2d 900 (Ala. 1995). Therefore, we affirm the summary judgment as to this issue.
AFFIRMED.
COBB, C.J., and LYONS, STUART, and MURDOCK, JJ., concur.
[1] Painter was a member of United Steel Workers of America, Local Union 1057.