By its petition for a writ of mandamus filed on September 25, 2002, Progress Rail Services Corporation ("Progress Rail") seeks an order directing the Marshall Circuit Court to dismiss the plaintiffs' claims against it, on the basis that the claims were barred by the exclusivity and immunity provisions of the Alabama Workers' Compensation Act.
The tragic circumstances giving rise to the underlying action are as follows: Lydia Garcia and her husband, Daniel Pantoja Garcia, were both employees of Progress Rail, a company that, among other things, purchased old railroad cars and locomotives for scrap metal. Lydia's and Daniel's job responsibilities included cutting scrap metal with a cutting torch, described in the plaintiffs' complaint as a "blow torch." In November 2001, Progress Rail was in the process of cutting up several railroad box cars and a locomotive for scrap metal. The crew consisted of Lydia and Daniel and their supervisor, James Painter. Initially, Painter told the couple that one of the cars, which had a 4,000-gallon diesel fuel tank, would not be cut because there was fuel residue in the tank. Subsequently, however, on November 13, 2001, Painter retrieved the fuel tank and ordered Daniel and Lydia to cut it in half, apparently so that it would fit on a truck for *Page 461 
transport. They began cutting the fuel tank, working on opposite ends. At a point in the operation, an explosion occurred and Lydia was engulfed in flames; she died of her injuries approximately 14 days later.
It is undisputed that at the time of the incident, Lydia was an employee of Progress Rail and that her injury and resulting death were caused by an accident arising out of and in the course of her employment. Subsequently, in a separate action filed in the Marshall Circuit Court, the circuit court determined that Daniel and the couple's three children were the "appropriate and sole dependents [of Lydia] to receive the benefits under the Alabama Workers' Compensation Act." Those benefits, both accrued and prospective, were declared by a judgment entered on March 13, 2002; that judgment contained the provision that "[f]ollowing the payment of the benefits set out herein, all obligations of [Progress Rail] to the dependents under the Alabama Workers' Compensation Act shall cease." Four days before that judgment was entered, Daniel and the three children, proceeding in various specified capacities (hereinafter collectively referred to as "the Garcias"), sued Progress Rail, Progress Energy Service Company, LLC, Painter, and three other of Lydia's co-employees.
The Garcias' five-count complaint asserted the following claims: Count I, alleging that the defendants, including Progress Rail, "intentionally and/or willfully caused the fatal injuries to the deceased," in violation of their duty to provide her with a safe place to work; Count II, alleging that Progress Rail intentionally and willfully failed to hire, train, and/or supervise the co-employee defendants; Count III, alleging that the co-employee defendants willfully and/or intentionally controlled and/or failed to control the method and manner by which the work was performed, entitling the Garcias to recover damages against all defendants; Count IV, alleging that Daniel was entitled to recover for loss of consortium; and Count V, alleging that Lydia's three minor dependent children were entitled to recover for loss of her services.
Progress Rail, jointly with the other defendants, filed a motion to dismiss, asserting that the various counts failed to state a claim upon which relief could be granted. Progress Rail specifically asserted that, as to it, the Garcias' claims were barred by the exclusive-remedy provisions of the Workers' Compensation Act, § 25-5-1 et seq., Ala. Code 1975 (hereinafter sometimes referred to as "the Act"). Progress Rail pointed out that it was undisputed that it was Lydia's employer and that her accident and injuries occurred while she was performing the duties of her employment; that it was an employer subject to the Act; and that, in fact, it was already paying benefits to the Garcias pursuant to the Act. On August 14, 2002, after conducting a hearing on the motion, the circuit judge denied the motion. Only Progress Rail challenges that ruling in this mandamus petition.
The issue presented, as framed by the petition, the Garcias' answer and brief, and Progress Rail's reply brief, may be paraphrased as follows:
 "Where an employee is injured, and subsequently dies, as a result of an accident arising out of and in the course of her employment, which injury and death are covered under the Alabama Workers' Compensation Act, and her dependants receive temporary total disability benefits, medical benefits, death benefits, and burial expense benefits from the employer under the Act, may the dependents maintain a separate tort action against the employer alleging that the *Page 462 
employer had intentionally and willfully failed to provide a safe place to work, in violation of § 25-1-1, Ala. Code 1975?"
Although the Garcias have asserted loss-of-consortium and loss-of-services claims, they do not argue those claims in their answer and brief. In fact, they argue only that the claims presented by Count I should be allowed to proceed. Even if the claims alleging loss of consortium and loss of services could otherwise be legally cognizable, they are derivative of, and dependent upon the outcome of, the direct claim arising out of Lydia's death. Therefore, if the exclusivity provisions of the Act are applicable to the direct claim, the derivative claims are likewise subject to the exclusivity provisions. See Murdockv. Steel Processing Servs., Inc., 581 So.2d 846 (Ala. 1991). Given our disposition of the direct claim, we need not separately analyze the loss-of-consortium and loss-of-services claims.
Various sections of the Code of Alabama 1975 are pertinent to a proper analysis of the issue presented by this petition. Section 25-1-1(a), the first section of Article 1 of Chapter 1 of Title 25, "Industrial Relations and Labor," reads:
 "(a) Every employer shall furnish employment which shall be reasonably safe for the employees engaged therein and shall furnish and use safety devices and safeguards and shall adopt and use methods and processes reasonably adequate to render such employment and the places where the employment is performed reasonably safe for his employees and others who are not trespassers, and he shall do everything reasonably necessary to protect the life, health and safety of his employees and others who are not trespassers."
Chapter 5 of Title 25 of the Alabama Code 1975, entitled "Workers' Compensation" contains the following pertinent sections:
 Section 25-5-1(7): "Accident. The term, as used in the phrases `personal injuries due to accident' or `injuries or death caused by accident' shall be construed to mean an unexpected or unforeseen event, happening suddenly and violently, with or without human fault, and producing at the time injury to the physical structure of the body or damage to an artificial member of the body by accidental means."
 Section 25-5-1(8): "Injuries by an accident arising out of and in the course of the employment. Without otherwise affecting either the meaning or interpretation of the clause, the clause does not cover workers except while engaged in or about the premises where their services are being performed or where their service requires their presence as a part of service at the time of the accident and during the hours of service as workers."
 Section 25-5-11(a): "If the injury or death for which compensation is payable under Articles 3 or 4 of this chapter was caused under circumstances also creating a legal liability for damages on the part of any party other than the employer, whether or not the party is subject to this chapter, the employee, or his or her dependents in case of death, may proceed against the employer to recover compensation under this chapter or may agree with the employer upon the compensation payable under this chapter, and at the same time, may bring an action against the other party to recover damages for the injury or death, and the amount of the damages shall be ascertained and determined without regard to this chapter. If a party, other than the employer, is a workers' compensation insurance carrier of the employer or any person, firm, association, trust, fund, or *Page 463 
corporation responsible for servicing and payment of workers' compensation claims for the employer, or any officer, director, agent, or employee of the carrier, person, firm, association, trust, fund, or corporation, or is a labor union, or any official or representative thereof, or is a governmental agency providing occupational safety and health services, or an employee of the agency, or is an officer, director, agent, or employee of the same employer, or his or her personal representative, the injured employee, or his or her dependents in the case of death, may bring an action against any workers' compensation insurance carrier of the employer or any person, firm, association, trust, fund, or corporation responsible for servicing and payment of workers' compensation claims for the employer, labor union, or the governmental agency, or person, or his or her personal representative, only for willful conduct which results in or proximately causes the injury or death. . . ."
 Section 25-5-31: "When personal injury or death is caused to an employee by an accident arising out of and in the course of his employment, of which injury the actual or lawfully imputed negligence of the employer is the natural and proximate cause, he, or in case of death, his personal representative, for the exclusive benefit of the surviving spouse and next of kin, shall receive compensation by way of damages therefor from the employer; provided, that the injury or death was not caused by the wilful misconduct of the employee or was not due to misconduct on his part, as defined in Section 25-5-51."
 Section 25-5-52: "Except as provided in this chapter, no employee of any employer subject to this chapter, nor the personal representative, surviving spouse, or next of kin of the employee shall have a right to any other method, form, or amount of compensation or damages for an injury or death occasioned by an accident or occupational disease proximately resulting from and while engaged in the actual performance of the duties of his or her employment and from a cause originating in such employment or determination thereof."
 Section 25-5-53: "The rights and remedies granted in this chapter to an employee shall exclude all other rights and remedies of the employee, his or her personal representative, parent, dependent, or next of kin, at common law, by statute, or otherwise on account of injury, loss of services, or death. Except as provided in this chapter, no employer shall be held civilly liable for personal injury to or death of the employer's employee, for purposes of this chapter, whose injury or death is due to an accident or to an occupational disease while engaged in the service or business of the employer, the cause of which accident or occupational disease originates in the employment. In addition, immunity from civil liability for all causes of action except those based upon willful conduct shall also extend to the workers' compensation insurance carrier of the employer; to a person, firm, association, trust, fund, or corporation responsible for servicing and payment of workers' compensation claims for the employer; to an officer, director, agent, or employee of the carrier, person, firm, association, trust, fund, or corporation; to a labor union, an official, or representative thereof; to a governmental agency providing occupational safety and health services, or an employee of the agency; and to an officer, director, agent, or employee of the same employer, or his or her personal representative. Nothing in this section shall be construed to relieve a person from criminal prosecution *Page 464 
for failure or neglect to perform a duty imposed by law."
Progress Rail relies heavily on Ex parte McCartney Construction Co.,720 So.2d 910 (Ala. 1998), which it contends is "directly on point, cannot be distinguished from the present case in any meaningful way, and is controlling." The Garcias undertake to distinguish McCartney. The Garcias argue that McCartney and the cases on which it relied "do not shed any light on the issue before this Court." The Garcias rely principally on three cases from this Court and a case decided by the Alabama Court of Civil Appeals. They cite and discuss Tittle v. CustardInsurance Adjusters, 590 So.2d 880 (Ala. 1991), Lowman v. PiedmontExecutive Shirt Manufacturing Co., 547 So.2d 90 (Ala. 1989), Fontenot v.Bramlett, 470 So.2d 669 (Ala. 1985), and Etheredge v. Flowers,766 So.2d 842 (Ala.Civ.App. 1999). They also cite, but do not discuss in any way, several other cases, which they simply list in a "string cite":Patterson v. Augat Wiring Sys., Inc., 944 F. Supp. 1509 (M.D.Ala. 1996);Jones v. Colonial BancGroup, 735 So.2d 1163 (Ala.Civ.App. 1998); Stewartv. Matthews Indus., Inc., 644 So.2d 915 (Ala. 1994); Raines v.Browning-Ferris Indus., Inc., 638 So.2d 1334 (Ala.Civ.App. 1993); andBusby v. Truswal Sys. Corp., 551 So.2d 322 (Ala. 1989). In its reply brief, Progress Rail discusses not only Tittle, Lowman, and Fontenot, but also each of the cases the Garcias cite, arguing that none of them are truly relevant to the issue at hand.
The thrust of the Garcias' argument in response to Progress Rail's exclusivity argument is essentially that § 25-1-1 imposes on an employer a statutory duty to provide its employees with a safe place to work and that this duty, when intentionally and willfully breached, gives rise to a cause of action unencumbered by the exclusive-remedy provisions of the Act. Progress Rail argues just the opposite, contending that when an employee suffers injury or death caused by an accident arising out of and in the course of his employment, and the injury or death is covered under the Act, the Act's exclusivity provisions apply and control, even though the accident arose out of a failure to provide a safe place to work and regardless of whether the employer's conduct was negligent, wanton, intentional, or willful.
Because the parties cite, but argue differently, a number of cases, including the ones already noted, we analyze the respective holdings and rationales of those cases and determine the relevance of each to the issue at hand. As noted, the Garcias cite Fontenot, Lowman, and Tittle, asserting that the holdings of those cases are to the effect "that the exclusivity provisions of the workers' compensation act do not prohibit an act for intentional tortious conduct." (Garcias' brief at p. 10.) As also noted, Progress Rail relies principally on Ex parte McCartneyConstruction Co., supra, contending that in that case "this Court held that an employee has no cause of action against her employer for an alleged violation of Ala. Code § 25-1-1, i.e., the failure to provide a safe workplace, even where the failure is alleged to be willful." Procedurally and factually McCartney closely parallels the present case. In McCartney, Timmons, an employee of McCartney, suffered an on-the-job injury that was covered by the provisions of the Act.
 "Timmons sued McCartney and a co-employee for damages based on his injury, alleging that they had intentionally and willfully failed to provide him with a safe workplace, in violation of § 25-1-1.
 "McCartney moved to dismiss the complaint on the ground that it was entitled to immunity pursuant to §§ 25-5-52 and 25-5-53 (the `exclusive remedy' *Page 465 
provisions of the Workers' Compensation Act). The trial court denied the motion to dismiss holding that because Timmons alleged intentional and willful misconduct on the part of the defendants, McCartney was not entitled to immunity."
720 So.2d at 910. McCartney then "petition[ed] for a writ of mandamus directing [the Etowah Circuit Court] to vacate its order denying McCartney's motion to dismiss and, to dismiss McCartney as a defendant." 720 So.2d at 910. This Court granted the petition and ordered the relief sought. The Court noted the pertinent language of §§ 25-5-52 and -53 and observed that § 25-5-11
 "authorizes the injured employee to bring an action against `any party other than the employer' who is also legally responsible for the injury, and further provides:
 "'(b) If personal injury or death to any employee results from the willful conduct . . . of any officer, director, agent, or employee of the same employer . . ., the employee shall have a cause of action against the person. . . .'"
720 So.2d at 911.
The Court then quoted Murdock, 581 So.2d at 848, for the proposition that, in adopting the exclusivity provisions of the Act, the Legislature intended "to provide complete immunity to employers," and "limited immunity" to co-employees, from all civil causes of action "except those based on willful conduct," referencing § 25-5-14, Ala. Code 1975. 720 So.2d at 911. Section 25-5-14 expresses the Legislature's finding that co-employee suits predicated upon claimed negligent or wanton conduct had become disruptive to the comprehensive workers' compensation scheme, having a debilitating and adverse effect upon the attraction and retention of industry, and resulting in substantial cost and expense, without any reliable evidence to show that such suits had substantially improved working conditions and work practices. Therefore, the Legislature declared in § 25-5-14:
 "The intent of the Legislature is to provide complete immunity to employers and limited immunity to officers, directors, agents, servants or employees of the same employer and to the workers' compensation insurance carrier and compensation service companies of the employer or any officer, director, agent, servant or employee of such carrier or company and to labor unions and to any official or representative thereof from civil liability for all causes of action except those based on willful conduct and such immunity is an essential aspect of the workers' compensation scheme."
(Emphasis supplied.)
Section 25-5-14 complements § 25-5-11, which provides in subsection (a), "If the injury or death for which compensation is payable . . . was caused under circumstances also creating a legal liability for damages on the part of any party other than the employer, . . . the employee, or his or her dependents in case of death, may proceed against the employer to recover compensation," and at the same time may proceed against the third party. Section 25-5-11 goes on to provide, among other things, however, that if the third party is a co-employee, the third-party action can proceed only if the injury or death resulted "from the willful conduct" of the co-employee. Obviously, by reaffirming the "complete immunity" for employers, while simultaneously providing a "limited immunity" to various third parties, including co-employees, the Legislature evidenced a carefully calibrated intent to preserve to employers the immunity and exclusivity of remedy declared in *Page 466 
§ 25-5-52 and § 25-5-53. The McCartney Court also quoted the following from Padgett v. Neptune Water Meter Co., 585 So.2d 900, 901 (Ala. 1991):
 "'In the recent case of Johnson v. Asphalt Hot Mix, 565 So.2d 219 (Ala. 1990), this Court stated that § 25-5-11, Ala. Code 1975, does not provide an action against an employer. Section 25-5-11(a) provides that actions may be maintained against those parties that may be jointly liable with the employer, provided that if the other party is a coemployee, then his actions in order to give rise to liability, must be willful. Section 25-5-11 does not effect the immunity provided by §§ 25-5-52 and 25-5-53.'"
720 So.2d at 911.
The McCartney Court concluded its explanation of its rationale by citing Powell v. United States Fidelity Guaranty Co., 646 So.2d 637
(Ala. 1994). In Powell, two employees of Owens Plating Company sued three co-employees, alleging, among other things, that the employer had delegated, in material portion, to the co-employees its duty under § 25-1-1
to provide a safe workplace, and that the co-employees had negligently and/or wantonly breached that duty. The employer, which provided workers' compensation coverage for the on-the-job injuries, was not sued. The trial court granted the co-employees' motion to dismiss as to that particular claim; this Court affirmed. The Powell Court pointed out that "[s]ection 25-1-1 is a general industrial relations and labor statute that establishes an employer's duty to provide a safe workplace for its employees, and it has long formed the basis for co-employee liability." 646 So.2d at 638. The Court acknowledged that "[b]efore 1985, co-employees who negligently and/or wantonly failed to provide a safe working condition could be civilly liable under 25-1-1 for personal injuries arising from their negligence," but that in 1985 the Alabama Legislature passed the Act subsequently codified into § 25-5-11 and §25-5-53.[1] Those provisions prohibit actions against co-employees based on claims of negligence or wantonness, allowing co-employee liability "only for injuries that are intentionally or willfully caused by the co-employee." 646 So.2d at 638.
Pertinent to the present case, the co-employees argued in Powell "that § 25-5-11 and § 25-5-53 are separate from § 25-1-1 and have not abrogated the cause of action based on negligent failure to maintain a safe workplace under § 25-1-1." 646 So.2d at 639. This Court rejected that argument, reasoning that it was accurate to say only that the exclusivity provisions of § 25-5-53 and § 25-5-11 did not preclude a cause of action against a co-employee under § 25-1-1 when the claim involved allegations of "willful or intentional" acts or omissions. Because the Powell
plaintiffs alleged only a negligent or wanton breach by their co-employees of the duty allegedly delegated to them to provide a safe workplace, this Court held that the trial court's dismissal of the claim was appropriate. Thus, this Court refused to accept the plaintiffs' argument that breach of the duty imposed by § 25-1-1 to provide a safe workplace gave rise to a cause of action that was exempt from the limiting provisions of §§ 25-5-11 and 25-5-53. The Court reasoned that § 25-1-1 was subject to the exclusivity provision of § 25-5-53, as qualified by the §25-5-11 exemption for co-employee actions asserting an injury "intentionally or willfully *Page 467 
caused by the co-employee." 646 So.2d at 638.
The Garcias attempt to distinguish McCartney on the basis that theMcCartney Court "relied upon § 25-5-11," whereas "Garcia [the collective reference used by the plaintiffs] does not support his claims against Progress Rail on § 25-5-11, Ala. Code (1975); instead, he supports said claims on § 25-1-1, Ala. Code (1975)." (Garcias' brief at pp. 15-16.) We cannot agree with that narrow reading of McCartney. The question before the McCartney Court was whether the injured employee could maintain an action against his employer based on allegations that it "had intentionally and willfully failed to provide [the employee] with a safe workplace, in violation of § 25-1-1." 720 So.2d at 910. The Court there relied on § 25-5-11, in conjunction with § 25-5-53, but for the purpose of concluding that the interrelationship of the provisions of those sections with the provisions of § 25-1-1 would not allow recognition of a cause of action under § 25-1-1 totally independent of, and outside of the reach of, §§ 25-5-11 and 25-5-53.
The Garcias also argue that the two cases McCartney relied on, Murdock
and Padgett, supra, fail to "shed any light on the issue before this Court." (Garcias' brief at p. 19.) They point to the fact that Murdock, which held that the exclusivity provision of § 25-5-53 barred an action for loss of consortium by a dependent spouse, did not involve a claim of intentional and/or willful conduct, and the fact that Padgett
merely held that an employer whose employee was injured during and in the course of his employment, and sued the employer for workers' compensation benefits, could not also maintain a separate action against the employer based on a theory of respondeat superior liability for the actions of co-employees who allegedly intentionally caused the employee's injury. As noted, however, the Padgett Court held that the claims against the employer based on respondeat superior were barred by the doctrine of immunity set forth in § 25-5-52. The Court's exact holding was that "[the employee] has pursued his claim for compensation from [the employer] through a workers' compensation action; he cannot maintain a separate action based upon respondeat superior to impose civil liability upon the employer for injuries compensable under the workers' compensation act." 585 So.2d at 901.
Progress Rail also quotes the following passage from this Court's opinion in Ex parte Shelby County Health Care Authority, [Ms. 1001647, August 30, 2002] 850 So.2d 332, 338 (Ala. 2002):
 "Sections 25-5-52 and -53, Ala. Code 1975, are unambiguous in their explicit limitation: the Act is the exclusive remedy when an employee is injured in an accident proximately resulting from, and that occurred while the employee was engaged in, the actual performance of the duties of his or her employment."
Six of the nine Justices concurred in the portion of the opinion quoted above; one Justice concurred specially, apparently, in the process, concurring in that portion of the opinion; and two Justices concurred only in the result of the opinion. Justice Lyons, concurring in that portion of the opinion, but dissenting as to another portion of it, succinctly stated his understanding of the following principle, equally applicable to the case at hand:
 "In the context where the employee's claim is covered by the Act, this Court has held that the employee does not have a remedy in tort against the employer, regardless of whether the conduct of the employer is alleged to be intentional and willful. This is so because § 25-5-11, the savings provision of the Act permitting actions arising *Page 468 
from intentional and willful conduct, is limited to actions against co-employees. See Ex parte McCartney Constr. Co., 720 So.2d 910 (Ala. 1998)."
850 So.2d at 341 (Lyons, J., concurring in part and dissenting in part). In the final analysis, however, Justice Lyons considered McCartney to be distinguishable from the situation presented in Shelby County HealthCare, because in McCartney the employee's injury was covered by the provisions of the Act, whereas the injuries suffered by the employee inShelby County Health Care were not covered under the Act.
The Garcias' view of the import of Shelby County Health Care is as follows: In that case the issue presented was, in the words of the Garcias, "whether an employee who fell asleep while driving home from work [after working closely connected double shifts] can sustain a claim for, among other things, negligence and wantonness under § 25-1-1, Ala. Code (1975)." (Garcias' brief at p. 17.) Thus, say the Garcias, this Court "was presented with an opportunity to explicitly state that an employee has no cause of action against his or her employer under §25-1-1, but it did not." (Garcias' brief at p. 17.) The Garcias argue that, because the Court disposed of Shelby County Health Care on a different basis, it implicitly recognized the viability of such a cause of action.
The actual pertinent holdings in Shelby County Health Care were (1) that the employee's injuries sustained in the automobile accident were "not covered under the Act"; and (2) that because the employee's injuries were not covered under the Act, the employee was not precluded by the exclusivity provisions of §§ 25-5-52 and -53 from bringing a tort claim against the employer. The Court based its conclusion on the fact that §25-5-52 provides immunity to an employer as to an injury to an employee occasioned by accident proximately resulting from "and while engaged in the actual performance of the duties of his or her employment," and §25-5-53 bars an employee from bringing an action against an employer for injury "due to an accident . . . while engaged in the service of business of the employer." Because the Court held that, under the particular circumstances presented in that case, the employee's injuries did not occur while she was engaged in the actual performance of the duties of her employment, neither § 25-5-52 nor § 25-5-53 prohibited her from bringing a tort action against her employer for injuries arising from the automobile accident. In Shelby County Health Care, the employer, attempting to position itself to avail itself of the exclusivity provisions of §§ 25-5-52 and -53, argued that the employee's injuries were
covered by the Act. Thus, this Court's holding that the employee's injuries were not covered under the Act mooted any discussion of the exclusivity provisions of the Act vis-e-vis the duty imposed on an employer pursuant to § 25-1-1 to maintain a safe workplace. Consequently, we do not agree with the Garcias' analysis that implicit in the approach taken by the Court in Shelby County Health Care is a recognition that a tort claim for "failure to provide a safe place to work" might otherwise have been viable against the employer.
As earlier noted, the Garcias cite and briefly discuss Tittle, Lowman, and Fontenot in support of their contention that Alabama caselaw holds "that the exclusivity provisions of the workers' compensation act do not prohibit an action for intentional tortious conduct" (Garcias' brief at p. 10). Reviewing those cases chronologically, we find them to stand for the following propositions, as pertinent to the present case.
In Fontenot, decided in 1985, an employee, injured under circumstances bringing *Page 469 
her within the coverage of the Act, sued several defendants, including a co-employee who, she alleged, voluntarily assumed the § 25-1-1 duty of maintaining a safe workplace or to whom it had been delegated. The employer was not joined as a defendant. This Court pointed out that the term "employer" is specifically defined in § 25-1-1(c)(1) to include any "`agent, manager, representative, foreman, or other person having control or custody of any employment, place of employment or of any employee,'" 470 So.2d at 672, and that Alabama had recognized the right of an employee to sue a co-employee for negligently failing to carry out his individually delegated or assumed duty to provide a safe workplace. Therefore, the Court held, the action could proceed against the co-employee because he was not entitled, as he had contended, "to the immunity provided to their employer, as a matter of law, by the Workmen's Compensation Act, [Ala.] Code 1975, § 25-5-11." 470 So.2d at 673. (The action in Fontenot was filed before the 1985 amendment to § 25-5-11
limiting co-employee exposure to suit, discussed in Powell, supra.)
As the Garcias point out in their answer and brief, the Fontenot Court did quote the following statement from an opinion by a Justice concurring in the result in Fireman's Fund American Ins. Co. v. Coleman, 394 So.2d 334
(Ala. 1980):
 "`[C]ertain duties owed by an employer to his employees are so inherent and fundamental to the employer/employee relationship that the employer cannot escape liability to an injured employee resulting from its breach by delegating its performance to other employees and then seeking refuge in the "fellow servant" defense. It does not mean the duty in fact cannot be delegated.'"
470 So.2d at 673. This statement was made in the context of noting that a co-employee could be personally liable for his own, albeit delegated or assumed, duty to provide a safe place to work. The Justice writing specially in Coleman also explained that "'[o]nly where the employer,except for employer immunity, owes a duty of due care,'" and that duty is assumed by a co-employee who breaches it through personal fault, "`can liability be imposed upon the co-employee.'" Fontenot, 470 So.2d at 673 (emphasis supplied). After all is said and done, Fontenot explicitly referenced the immunity the employer would enjoy with respect to a duty to maintain a safe workplace, but held that that immunity did not extend to a culpable co-employee to whom that duty had been delegated or by whom the duty had been assumed.
In Lowman, decided in 1989, an injured employee sued her employer and a co-employee on theories of fraud, conspiracy to defraud, and the tort of outrage, arising out of the co-employee's coercive conduct, in furtherance of the employer's interests, in refusing to allow the injured employee to seek workers' compensation benefits for her on-the-job injury and threatening her, while she was still hospitalized from her injury, with being stuck with a big medical bill if she did not "file her disability claim as for an off-the-job injury." 547 So.2d at 92. The trial court granted the defendants' motion for a summary judgment predicated on the exclusive-remedy provisions of the Act. On appeal, this Court concluded that "[t]he main issue here presented is how far the exclusivity provisions of the [Workers'] Compensation Act extend." 547 So.2d at 92. Concluding that the tortious conduct of the defendants did not qualify as an "accident" compensable under the Act, the Court next concluded that because that conduct was "not covered" by the Act, the "exclusivity provisions of the Act are irrelevant to the present causes of action." 547 So.2d at 94. *Page 470 
 "It logically follows that if an accident is not compensable because it is outside the coverage of the Act, then the exclusive remedy provisions of the Act are also inapplicable. Thus, an employer is protected from tort liability only as to injuries expressly covered by the language of the Act."
547 So.2d at 93.
It is in that context that we must read the two excerpts from theLowman opinion the Garcias quote representing the essential holding of the case: "[T]he exclusive remedy provisions were not designed to shield an employer . . . from the entire field of tort law," and "intentional tortious conduct . . . committed beyond the bounds of the employer's proper role is actionable." 547 So.2d at 92, 95. Immediately following the first of those quoted statements in the opinion, however, is the statement that "[t]hese [exclusive-remedy] provisions apply only to limit the liability of an employer . . . to the statutorily prescribed claims for job-related injuries." 547 So.2d at 92. Accordingly, while recognizing the immunity an employer enjoys with respect to an employee's on-the-job injury, the Court declared the principle later echoed inShelby County Health Care, supra, that the exclusivity provisions do not apply if an employee's injury falls outside the coverage of the Act. AsLowman declared, "an employer is protected from tort liability only as to injuries expressly covered by the language of the Act." 547 So.2d at 93. Therefore, the statement in Lowman that "intentional tortious conduct . . . committed beyond the bounds of the employer's proper role is actionable," 547 So.2d at 95 (emphasis supplied), does not support the different proposition for which the Garcias cite it — that intentional tortious conduct committed within the bounds of the employer's proper role is actionable.
Finally, in Tittle, decided in 1991, an employee who had sustained a work-related injury sued two insurance adjusting companies and an employee of one of the companies, asserting various claims predicated on alleged negligence, wantonness, and intentional misconduct. The trial court entered a partial summary judgment for one of the companies and its employee, except as to a claim asserting the tort of outrage. The trial court entered a summary judgment for the other company, Custard Insurance Adjusters, on the plaintiff's claim that Custard had undertaken "to ensure that certain rehabilitation services were provided to her following an on-the-job injury," 590 So.2d at 880, but had breached its duties in that regard. It is to be noted that neither the employer nor its workers' compensation carrier were sued in Tittle, it being explicit in the opinion that the injury was accepted as a covered injury under the Act and that benefits were provided to the injured employee. Accordingly, no issue of employer immunity was involved; the Court was dealing simply with a third-party action against an adjusting company that the workers' compensation carrier had hired to act on its behalf in overseeing the provision of certain benefits under the Act.[2]
The Garcias quote from Tittle the proposition that the Act should not be an "`impervious barrier, insulating a wrongdoer from the payment of just and fair damages for intentional tortious acts.'" *Page 471 
590 So.2d at 881 (quoting Lowman, 547 So.2d at 94). This incomplete quotation is somewhat misleading, inasmuch as the full statement in Tittle, which is itself a quotation from Lowman, quoting in turn a federal district court case, is as follows: "'[T]he Act should not be an impervious barrier, insulating a wrongdoer from the payment of just and fair damages for intentional tortious acts only very tenuously related to workplaceaccidents.'" Lowman, 547 So.2d at 94 (quoting Carpentino v. TransportIns. Co., 609 F. Supp. 556, 562 (D.C. Conn. 1985)); Tittle, 590 So.2d at 881. (Emphasis supplied.) Thus, because the intentional tortious acts asserted against Custard were "only very tenuously related to [the employee's] workplace accident," the exclusivity provision of § 25-5-52
(being the only section of the Act quoted in the opinion) would not provide protection to it as a nonemployer, third party.
As noted, in addition to citing and briefly discussing Tittle, Lowman, and Fontenot, the Garcias provide a "see also" string cite of five other cases. The Garcias do not discuss what those cases held, or how they presumably further support the Garcias' contention that "[t]he Courts in this State have held that exclusivity provisions of the Workers' Compensation Act do not prohibit an action for intentional tortious conduct." (Garcias' brief at p. 10.) Nonetheless, we have read each of the cases cited, and none are relevant to the immunity/exclusive-remedy issue presented in this case. Specifically, those cases involve either alleged wrongful conduct clearly outside of the scope of the Act, or a claim against a nonemployer, or a claim for benefits under the Act, as opposed to a separate civil action.
The Garcias also argue that the plain meaning of the language of §25-1-1 establishes "that an employer has a statutory duty to provide his or her employees with a safe place to work, which if breached, stands to reason [(sic)] that the employee has a cause of action against said employer for such breach," citing Shelby County Health Care. (Garcias' brief at p. 14.) Of course, Shelby County Health Care stands only for the proposition that the immunity and exclusivity provisions of the Act pose no barrier to a civil tort action in a case where the underlying injury is not covered under the Act. In the present case, Lydia's injury and resulting death were clearly covered under the Act, and compensation and other benefits due her dependents under the Act have been duly provided to and accepted by them.
Finally, the Garcias cite Etheredge v. Flowers, 766 So.2d 842
(Ala.Civ.App. 1999). Their reading of Etheredge is that the plaintiff in that case "sued her former employer, as well as several of her co-employees, for, among other things, failure to provide her with a safe place to work." (Garcias' brief at p. 14.) They then quote from Etheredge
the statement that "the exclusivity provisions of the Workers' Compensation Act do not preclude a cause of action under § 25-1-1, Ala. Code 1975, for failure to provide a safe workplace" and the statement that "`the exclusivity provisions have limited this cause of action under § 25-1-1 to only those instances where the breach of this duty is willful or intentional.'" 766 So.2d at 846 (quoting Powell v. United States Fid. Guar. Co., 646 So.2d at 639). Our own close reading of Etheredge
reveals some ambiguity as to just what claims were made against what parties, and, thus, some ambiguity of the resulting contours of that decision. The introductory paragraph in Etheredge states:
 "Melanie Etheredge sued her former employer, Dorsey Trailer Company, Inc. (`Dorsey'), for workers' compensation benefits and alleged a claim of *Page 472 retaliatory discharge, alleging that Dorsey had terminated her employment because she had filed a claim for workers' compensation benefits. She also sued Marty Flowers, her line supervisor at Dorsey; Jimmy Hudson, the general supervisor of Etheredge's shift; Buddy Hall, who worked in personnel and human resources at Dorsey; and Doug Allgood, the former general manager at Dorsey, claiming that they and Dorsey had failed to provide her with a safe place to work."
766 So.2d at 843 (emphasis supplied).
It is unclear from that explanation whether Etheredge sued Dorsey seeking only workers' compensation benefits and damages for retaliatory discharge, and sued the named co-employees only for failure to provide her with a safe place to work, or whether she also sued Dorsey along with the co-employees for a failure to provide her with a safe workplace. The opinion goes on to explain that "the trial court entered a summary judgment in favor of the defendants on the claims alleging a retaliatory discharge and a failure to provide a safe workplace." 766 So.2d at 843. Because the retaliatory-discharge claim was asserted only against Dorsey, this reference to a summary judgment in favor of "the defendants" as to the retaliatory-discharge claim only adds to the ambiguity, and the reference following it to a claim for a failure to provide a safe workplace therefore does not resolve the ambiguity. Pertinent to the claim in the present action, the Etheredge opinion continues with the statement that "Etheredge . . . contends that the trial court erred in entering a summary judgment in favor of the defendants on her claim alleging a failure to provide a safe workplace." 766 So.2d at 845. Again, we cannot be sure whether this is a reference to all five defendants, including Dorsey, or just to the four co-employee defendants. Assuming, however, that the opinion intends to include Dorsey, the employer, in its reference to the safe-workplace claim, we find the following statement in the opinion to be in error:
 "Despite the defendants' contention to the contrary, the exclusivity provisions of the Workers' Compensation Act do not preclude a cause of action under § 25-1-1, Ala. Code 1975, for failure to provide a safe workplace. Powell v. United States Fidelity Guaranty Co., 646 So.2d 637, 639 (Ala. 1994). `However, the exclusivity provisions have limited this cause of action under § 25-1-1 to only those instances where the breach of this duty is willful or intentional.' Id."
766 So.2d at 846. To the extent that this statement in Etheredge relies on Powell as authority for the proposition that the exclusivity provisions of the Act do not preclude a cause of action under § 25-1-1
against the employer where the breach of the duty is willful or intentional, that reliance is misplaced.
As previously noted, the employee in Powell sued an insurance carrier and three co-employees, alleging that the § 25-1-1 duty to provide the employee with a safe place to work had been delegated to the co-employees and that the co-employees had negligently and/or wantonly breached those delegated duties. The employer was not sued. Thus, the sentence quoted inEtheredge from Powell — "the exclusivity provisions have limited this cause of action under § 25-1-1 to only those instances where the breach of this duty is willful or intentional" — was directed in Powell only toward actions against co-employees. That was the entire thrust of the analysis of the portions of the Powell opinion leading up to that statement. Powell was not making the more global statement, which the Garcias seek to impute to it, that an employer, as well as co-employees, could *Page 473 
be sued for a violation of the § 25-1-1 duty where the breach of the duty was willful or intentional. Powell grounded the statement on the fact that "the exclusivity provisions have limited" the cause of action under § 25-1-1 to only those instances where the breach of duty was willful or intentional. The "exclusivity provisions" referenced, § 25-5-53 and §25-5-11, "limited" liability only as to various parties "other than the employer." Therefore, Powell's reference to "the exclusivity provisions" that "have limited" the cause of action under § 25-1-1 would have a field of operation only in an action against a co-employee. Etheredge bases its own statement quoted above only on Powell.
Inexplicably, the Etheredge opinion takes no note whatsoever of our opinion in McCartney, decided only one year previously. (That omission increases our uncertainty about whether Etheredge actually involved a claim directly against the employer, as opposed to just the co-employees, for the breach of the duty to provide an employee with a safe place to work.) If Etheredge is to be understood as addressing and allowing a safe-workplace claim made directly against the employer in a situation where the employee's injury is covered under the Act, it is incompatible with McCartney and to that extent is hereby overruled.
In conclusion, we cannot agree with the Garcias that it "stands to reason" that, because the Legislature has imposed a statutory duty on employers to provide their employees with a safe place to work, an injured employee can maintain an action against an employer for a breach of that duty even though the injury is fully covered under the Act, with that action to be exempt from what this Court has declared to be the "complete immunity" provided to an employer for such injuries. It certainly can be argued that the Legislature manifested an entirely different intent in 1992 when it completely rewrote § 25-5-11 so as to specifically provide that various parties, exclusive of the employer, could be sued for willful conduct. The Legislature's so specifying as to various nonemployer parties, but providing no corresponding "limited" immunity for employers that would modify the "complete" immunity employers had previously been declared to enjoy, suggests that the Legislature intended to leave unaltered the nature of employer immunity.
Accordingly, consistent with McCartney, we hold that Progress Rail is entitled to the relief it seeks. Therefore, its petition for the writ of mandamus is granted and the trial court is directed to enter an order dismissing Progress Rail as a party to the action.
PETITION GRANTED; WRIT ISSUED.
HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, WOODALL, and STUART, JJ., concur.
MOORE, C.J., dissents.
[1] In 1992 the Alabama Legislature passed Act No. 92-537, Ala. Acts 1992, amending the Alabama Workers' Compensation Act. These Code sections were among the sections amended by Act No. 92-537.
[2] In 1992, a year after Tittle was decided, a complete revision of §25-5-11 provided certain limited immunities for nonemployers, including a party that "is a workers' compensation insurance carrier of the employer or any person, firm, association, trust, fund, or corporation responsible for servicing and payment of workers' compensation claims for the employer . . ." that could be liable to an injured employee "for only willful conduct which results in or proximately causes the injury or death."