775 So.2d 783 (2000)
Patricia HOBBS
v.
ALABAMA POWER COMPANY.
1981160.
Supreme Court of Alabama.
March 24, 2000.
Order Overruling Rehearing May 26, 2000.
*784 Ralph E. Coleman of Coleman, Friday & Clem, Birmingham, for appellant.
Roger L. Bates, I. Ripon Britton, Jr., and Jeffrey D. Dyess of Hand Arendall, L.L.C., Birmingham, for appellee.
LYONS, Justice.
Patricia Hobbs sued Alabama Power Company ("APCo"), seeking workers' compensation benefits and alleging bad-faith failure to pay workers' compensation benefits. She later amended her complaint to include a fraud claim. She appeals from a summary judgment entered for APCo on her fraud claim and made final pursuant to Rule 54(b), Ala. R. Civ. P. We affirm.

I. Facts

APCo employed Hobbs as a meter reader. While working on January 3, 1996, she stepped in a hole; the accident resulted in her experiencing pain in her back and legs. Hobbs's treating physician, Dr. J. Michael Grabowski, diagnosed her injury as lumbar strain and placed her on restricted duty. Because Hobbs was not satisfied with the treatment Dr. Grabowski and two other physicians gave her, she chose Dr. Perry Savage from APCo's list of approved physicians, and she first saw him in April 1996. Dr. Savage diagnosed spinal stenosis, a degenerative spinal disease. Dr. Savage determined that Hobbs's lumbar strain resulted from her on-the-job injury but that her spinal stenosis was not related to her on-the-job injury. At that point, APCo agreed to pay for Hobbs's medical treatment for as long as she suffered from lumbar strain.
On May 10 and 13, 1996, APCo's health manager informed Hobbs that APCo's workers' compensation insurance would cover her expenses related to her on-the-job injury, so long as there was a relationship between her back pain and her accident, but, because her condition was degenerative, she should file any additional medical expenses with her personal health-insurance carrier. On December 2, 1996, Dr. Savage stated that Hobbs's on-the-job injury had aggravated her preexisting spinal stenosis, but that the aggravation was temporary and transitory in nature. On December 5, 1996, he further stated that Hobbs should have recovered from her January 3, 1996, injury by that time and that she continued to suffer from only spinal stenosis, a condition that he had previously determined not to be related to her on-the-job injury. Dr. Savage recommended that Hobbs have decompression surgery. Although Dr. Savage said that surgery eventually would have been necessary to correct the spinal stenosis, he also stated that Hobbs's on-the-job injury made the surgery necessary sooner than it would have been if she had not had the injury.
As a result of this diagnosis, APCo's medical director concluded, based upon Hobbs's treatment records and consultations with Dr. Savage, that Hobbs's on-the-job injury did not cause her spinal stenosis and that surgery for spinal stenosis was not compensable from a workers' compensation standpoint. On December *785 11, 1996, APCo's health manager wrote a letter to Dr. Savage informing him that Hobbs's future medical treatment and appointments should be covered by her personal health-insurance carrier because APCo's workers' compensation insurance would no longer cover her medical expenses. On January 20, 1997, Dr. Savage restricted Hobbs to light-duty work. On January 23, 1997, APCo placed Hobbs on "family medical leave" because it could not accommodate the work restrictions Dr. Savage had given Hobbs.
Following Dr. Savage's recommendation for surgery, APCo's health manager again informed Hobbs that APCo's workers' compensation insurance carrier would not pay for her surgery because, it said, the injury did not arise out of her employment, and the health manager recommended that she submit her claim to her personal health-insurance carrier. APCo's health manager also told Hobbs that APCo would not compensate her for personal leave after the surgery. In her deposition, Hobbs testified that she could not afford to be absent from work without compensation and therefore decided not to have the surgery at that time. However, Dr. Savage eventually performed surgery on Hobbs's back, on March 27, 1997, and again on November 3, 1997. Hobbs filed claims for these surgeries with her personal health-insurance carrier. Dr. Savage found that Hobbs had reached maximum medical improvement on August 31, 1998, and released Hobbs to return to work, with restrictions. Shortly thereafter, Hobbs returned to work as a meter reader, at a wage equal to or greater than her preinjury wage.

II. Procedural History

On January 22, 1997, Hobbs sued APCo, seeking workers' compensation benefits and seeking damages for bad-faith failure to pay a workers' compensation claim. On March 4, 1997, Hobbs moved for a partial summary judgment and/or expedited medical treatment. She moved for a summary judgment on her claim for workers' compensation, asking the court to determine that her injury was compensable under the Alabama Workers' Compensation Act. APCo then moved for a partial summary judgment on Hobbs's workers' compensation claim. Judge Drayton James, the trial judge, denied Hobbs's motion for a summary judgment and ordered Hobbs to submit her claims for surgery and medical expenses to her personal health-insurance carrier. Judge James concluded that APCo would have to reimburse Hobbs's health-insurance carrier if it was later determined that her medical treatment was the responsibility of APCo. Judge James also ordered APCo to pay Hobbs temporary total-disability benefits, for a period not to exceed four months.
On May 13, 1997, Hobbs moved to amend her complaint to include a claim alleging fraud. Hobbs alleged that APCo had defrauded her by requiring her to file a claim for her back surgery against her personal health insurance. Judge James granted Hobbs's motion to amend her complaint. After Hobbs filed her amended complaint, Judge James died. Subsequently, Judge Marvin Cherner was assigned this case. APCo moved for a partial summary judgment on Hobbs's bad-faith and fraud claims. On May 7, 1998, Judge Cherner entered a summary judgment for APCo on Hobbs's bad-faith claim, but denied a summary judgment on Hobbs's fraud claim. On July 28, 1998, APCo filed a motion to "reconsider" the denial of its summary-judgment motion on Hobbs's fraud claim.
Hobbs's claim for workers' compensation benefits was severed, and it was tried on September 8, 1998, by Judge G. William Noble. On October 16, 1998, Judge Noble found that Hobbs had suffered an on-the-job injury and that, while she did suffer from a degenerative condition, she was not precluded from recovering workers' compensation benefits because the preexisting condition had not affected her ability to perform her job. Judge Noble ordered APCo to pay Hobbs temporary total-disability *786 benefits for the period from January 23, 1997, to August 31, 1998, and to pay her permanent partial-disability benefits based on a 20% permanent partial impairment; and he ordered that APCo would remain liable for her future medical expenses incurred as a result of the injury.
On March 4, 1999, Judge Cherner granted APCo's motion to reconsider and entered a summary judgment for APCo on Hobbs's fraud claim. Hobbs appeals from that summary judgment.[1]

III. Fraud

Hobbs's amended complaint alleges that APCo (1) had "fraudulently required" her to report and seek medical coverage from her personal health-insurance carrier, (2) had represented to her that "her injuries were not covered by workers' compensation and should be properly covered by her health care provider, Blue Cross/ Blue Shield," and (3) had "mistakenly or intentionally represented to Hobbs that Blue Cross/Blue Shield should provide care and treatment for her injuries she had received on the job, when the defendant knew or should have known that same was a work related injury to be paid by defendant Alabama Power Company, as a self-insurer of workers' compensation benefits." Hobbs alleges that APCo, by making what she calls a false and fraudulent representation, proximately caused her to delay her treatment and caused an aggravation of her injury. She maintains that she "was emotionally distressed, embarrassed, and harassed" by these events and that she suffered much pain.
Our standard for reviewing a summary judgment is well settled. The summary judgment was proper if there was no genuine issue of material fact and if APCo was entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P. APCo had the burden of making a prima facie showing that no genuine issue of material fact existed and that it was entitled to a judgment as a matter of law. Long v. Jefferson County, 623 So.2d 1130 (Ala.1993). If APCo made that showing, then the burden shifted to Hobbs to present evidence creating a genuine issue of material fact, so as to avoid the entry of a judgment against her. Id. In deciding whether the evidence created a genuine issue of material fact, we view the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Id. The applicable standard of review is the "substantial-evidence" rule. § 12-21-12, Ala.Code 1975. "Substantial evidence" is defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
This Court has recognized that intentional tortious conduct, such as intentional fraud, "committed beyond the bounds of the employer's proper role," is actionable notwithstanding the exclusivity provisions of the workers' compensation act. Lowman v. Piedmont Executive Shirt Mfg. Co., 547 So.2d 90, 95 (Ala.1989). In Lowman, this Court stated:
"While recognizing that a cause of action for fraud is not prohibited by the exclusivity provisions of the Act, we are at the same time compelled to emphasize that a mere delay in payment of workmen's compensation benefits is not actionable as a separate tort claim. The penalty for untimely payment of workmen's compensation benefits is provided in § 25-5-59. Indeed, under the provisions of § 25-5-59, it is not necessary to allege or prove any element beyond the statutorily proscribed delay in payment of benefits, in order to recover the prescribed penalty. Again, we agree with the reasoning of Professor Larson:
"`It seems clear that a compensation claimant cannot transform a simple delay in payments into an actionable *787 tort by merely invoking the magic words "fraudulent, deceitful and intentional" or "intentional infliction of emotional distress" or "outrageous" conduct in his complaint. The temptation to shatter the exclusiveness principle by reaching for the tort weapon whenever there is a delay in payments or a termination of treatment is all too obvious, and awareness of this possibility has undoubtedly been one reason for the reluctance of courts to recognize this tort except in cases of egregious cruelty or venality.'
2A A. Larson, The Law of Workmen's Compensation, § 68.34(c), at p. 13-145 (1988)."
Id. at 94. In cases involving an allegation of intentional tortious conduct, this Court has imposed a standard of proof higher than the "substantial-evidence" standard:
"[A] plaintiff, in order to go to the jury on a claim [alleging intentional tortious conduct], must make a stronger showing than that required by the `substantial evidence rule' as it applies to the establishment of jury issues in regard to tort claims generally. See Code 1975, § 12-21-12. Therefore, we hold that in regard to a fraud claim against an employer, a fellow employee, or an employer's insurer, in order to present a claim to the jury, the plaintiff must present evidence that, if accepted and believed by the jury, would qualify as clear and convincing proof of fraud."
Id. at 95.
Hobbs argues that the trial court erred in entering the summary judgment for APCo on her fraud claim because, she says, she produced clear and convincing evidence of intentional fraud. She also argues that the trial court erred in reversing its original order denying a summary judgment, on her fraud claim. In granting APCo's motion to reconsider the denial of APCo's motion for a summary judgment on the fraud claim, the trial court stated:
"A statement by an employer that its employee is not entitled to worker's compensation benefits because the employee's disability was caused by a preexisting condition should not be the basis for [a] claim that the employer was guilty of fraud. Otherwise, an employee could assert a claim of fraud against her employer in connection with any denial of a worker's compensation claim by an employer. It could then be argued that every denial of an employee's worker's compensation claim is also a representation by the employer that the employee is not entitled to coverage.
"The Supreme Court of Alabama has held that claims that the employer acted in bad faith in denying worker's compensation benefits to its employee are barred by the exclusivity of remedy provisions of the Alabama Worker's Compensation Laws. Wooley v. Shewbart, 569 So.2d 712 (Ala.1990); Nabors v. St. Paul Insurance Co., 489 So.2d 573 (Ala. 1986); Garvin v. Shewbart, 442 So.2d 80 (Ala.1983).
"However, if the denial of worker's compensation benefits can give rise to a claim by the employee against his employer that the employer was guilty of fraud in denying her claim, the `bad faith' exclusion is rendered meaningless. The Supreme Court of Alabama could not have intended such an illogical result. This court agrees with counsel for [APCo] that allowing a claim for fraud to be asserted by Hobbs in this case would be allowing her to maintain a [claim alleging] bad faith failure to pay worker's compensation benefits disguised as [a claim alleging] intentional fraud."
In her amended complaint, Hobbs alleges that her treatment was delayed as a proximate consequence of APCo's allegedly false and fraudulent representation. Hobbs argues that APCo's conduct exceeds the conduct of the employer in Lowman. However, Hobbs's case is distinguishable from Lowman. Lowman sustained a back injury while working for *788 Piedmont and filed a workers' compensation claim. 547 So.2d at 91-92. Piedmont's claims worker, Carol Hart, refused to process Lowman's claim and instructed her to fill out a claim stating that she had been injured at home, even though Hart had knowledge of the job-related nature of her injury, both from the employee and from her supervisors. Id. at 92. Several days later, Hart visited Lowman in the hospital, where Lowman was more acutely concerned about paying bills, and threatened her with "being stuck with a big [medical] bill" if she did not file her disability claim as one caused by an off-the-job injury. Id. Piedmont refused to pay any of Lowman's medical expenses. This Court found the employer's conduct to be "beyond the bounds of the employer's proper role." Id. at 95.
Unlike the employer in Lowman, APCo never, with information to the contrary, insisted that the injury occurred away from the job. It never instructed Hobbs to complete a false claim, and it never preyed upon Hobbs with threats of financial ruin while she was in a weakened position. Even viewing the evidence in the light most favorable to Hobbs, we cannot say that APCo, by requiring Hobbs to submit her medical expenses associated with spinal stenosis to her private health-insurance carrier and by denying her request for coverage under APCo's workers' compensation plan, was guilty of conduct "beyond the bounds of the employer's proper role." See Lowman, 547 So.2d at 95. In Hobbs's case, APCo offered to pay, and in fact did pay, her medical expenses associated with the lumbar strain that resulted from the January 3, 1996, on-the-job accident. This action was within the realm of APCo's proper role as an employer.
In his order awarding Hobbs workers' compensation benefits, Judge Noble noted that she had been able to perform her duties as a meter reader before the January 3, 1996, accident. Under Alabama workers' compensation law, an employee has no "preexisting condition" if the employee is able to perform her work-related duties regardless of the existence of the condition alleged to constitute a "preexisting condition." See, e.g., International Paper Co. v. Rogers, 500 So.2d 1102 (Ala.Civ.App.1986) (holding that an employee was entitled to workers' compensation benefits although before the accident she had suffered from a back deformity; she had never missed time from work and had been able to perform the functions of her job before the accident). It is well settled that workers' compensation benefits are not limited to those in perfect health. Altadena Valley Golf & Country Club v. Blue Cross & Blue Shield of Alabama, 644 So.2d 913 (Ala.1994), quoting Ex parte Lewis, 469 So.2d 599 (Ala.1985). Therefore, although Hobbs's degenerative back condition was present before the January 3, 1996, accident, Judge Noble held that that degenerative condition was not a "preexisting condition" for workers' compensation purposes, because she was able to perform her work-related duties before the accident. In workers' compensation litigation, an employee and the employer often contest the question whether the employee's medical problem is the result of an independent preexisting condition, or is the result of an aggravation of a preexisting condition by a compensable injury. See § 25-5-58, Ala.Code 1975, and the cases cited in annotations in Alabama Digest, Workers' Compensation § 552.
In addition, as the trial court noted, to allow Hobbs to maintain a fraud claim against APCo under the circumstances of this case would in essence allow her to maintain a bad-faith claim against APCo. This Court has held that bad-faith claims are barred by the exclusivity provisions of the Workers' Compensation Act. Stewart v. Matthews Indus., Inc., 644 So.2d 915 (Ala.1994). The Legislature has provided a remedy for the employee when a payment is delayed by an employer acting within the bounds of its proper role. Section 25-5-59(b), Ala.Code 1975, requires an employer to pay a 15% penalty if the employer *789 does not pay workers' compensation benefits within 30 days after the installment becomes due. Hobbs never asked the trial court to impose this penalty on APCo.

IV. Conclusion

Hobbs's evidence did not meet the "clear-and-convincing" standard set forth in Lowman. The evidence shows that APCo, based upon medical advice, believed it was Hobbs's degenerative condition, not her on-the-job injury, that necessitated her surgery. Therefore, APCo's decision not to pay for Hobbs's surgery was within its proper role as an employer. We find no clear and convincing evidence suggesting that APCo, acting beyond the bounds of its proper role, committed fraud.
AFFIRMED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.

On Application for Rehearing
PER CURIAM.
APPLICATION OVERRULED, BOTH AS TO THE MERITS OF THE CASE AND AS TO THE COURT'S JULY 9, 1999, ORDER.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
LYONS, J., concurs as to the ruling directed to the merits of the case; he recuses himself from consideration of the application to the extent it relates to the Court's July 9, 1999, order.
LYONS, Justice (concurring as to the denial of rehearing directed to the merits of the case and recusing himself from consideration of the application to the extent it relates to the Court's July 9, 1999, order).
In her application for rehearing, the appellant observes that I had been recused from the Court's earlier consideration of a motion in this matter, yet authored the opinion on the merits. Canon 3C(1)(b), Ala. Canons of Jud. Ethics, requires my recusal in matters related to the effect of §§ 12-24-1 and -2, Ala. Code 1975. I, therefore, did not participate in the Court's consideration of the motion ruled on by the Court's order of July 9, 1999, a motion based on §§ 12-24-1 and -2. After that motion was denied, the case was assigned to me, and I authored the opinion now before the Court on this application for rehearing. In the application, the appellant renews her contentions as to §§ 12-24-1 and -2. I once again recuse myself from participating in the Court's consideration of, and its ruling on, that aspect of the appellant's application for rehearing directed to the issues previously the subject of this court's order of July 9, 1999.
NOTES
[1] Hobbs does not appeal the trial court's ruling on her bad-faith claim.