908 So.2d 932 (2004)
Madeline BEARD, as administratrix of the estate of Christopher Lawrence, deceased
v.
The MOBILE PRESS REGISTER, INC.
2030441.
Court of Civil Appeals of Alabama.
December 10, 2004.
Rehearing Denied March 11, 2005.
*933 Julia A. Beasley and J. Cole Portis of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Montgomery, for appellant.
Edward S. Sledge III, Walter T. Gilmer, Jr., and W. Craig Hamilton of McDowell Knight Roedder & Sledge, L.L.C., Mobile, for appellee.
PITTMAN, Judge.
This appeal, transferred to this court by the Alabama Supreme Court pursuant to § 12-2-7(6), Ala.Code 1975, concerns the nature of an employer's liability in the context of an employee's slaying by a co-worker.
On the afternoon of February 5, 2002, Roderick Seals, a mailroom worker who had been an employee of The Mobile Press Register, Inc. ("the employer"), for 11 years, reported to work armed with a pistol after he had consumed four containers of beer; Seals spent some time that afternoon in a locker room at the employer's premises changing clothes and cleaning the pistol before beginning work. Seals had suffered a cut on his hand a few days *934 before, causing him to miss some of his scheduled work hours, and Seals claimed during a conversation with a supervisor that day that his paycheck was smaller than he had expected. During and after that conversation, Seals was openly upset about his paycheck being "short," and he loudly and continuously talked to his co-workers about the perceived injustice.
The record indicates that Seals then began performing certain work-related tasks; he pulled several "skids," or pallets, of newspapers from near "stackers" (machines) in the newspaper-production line in the employer's mailroom and replaced those skids. However, according to his coworkers, Seals remained angry, mumbling to himself as he worked. At one point, Seals confronted one of the employer's temporary employees, who apparently owed Seals five dollars, and displayed his pistol to that employee while making threatening remarks; at that time, Seals disengaged the pistol's safety mechanism.
Minutes later, Seals drew his pistol, shot, and killed one of his coworkers, Christopher Lawrence ("the decedent"). The precise circumstances surrounding the decedent's death are somewhat uncertain, and were the subject of some dispute during a criminal trial[1] concerning Seals's conduct, but it appears that the decedent, who had been "catching" papers from a stacker, motioned to Seals to beckon him to come to the decedent's work position. Although Seals apparently did not believe that the decedent had a serious reason for beckoning to him, he went over to the decedent's work position. The two men then began grabbing bundles of newspapers. At one point, the decedent apparently grabbed Seals's shoulder and the pistol discharged, killing the decedent. Although Seals testified at his criminal trial that the pistol had discharged by accident when a newspaper bundle hit his hand, with which he was holding the pistol at the time, Seals was also reported to have said just after the incident that the decedent should not have grabbed him and that the shooting was in "self-defense."
In June 2002, Madeline Beard, the administratrix of the decedent's estate, brought a civil action in the Mobile Circuit Court against Seals and the employer. As amended, Beard's complaint alleged numerous tort-based theories of liability with respect to the employer, including failure to supervise or discipline Seals, failure to instruct other employees to report Seals's threatening conduct, failure to provide a safe workplace to the decedent, failure to protect the decedent from a criminal act, and vicarious liability for Seals's actions. Beard did not, however, assert any claim against the employer under the Alabama Workers' Compensation Act, § 25-5-1 et seq., Ala.Code 1975 ("the Act").
The employer, in its answer to Beard's last amended complaint, denied the pertinent allegations in the complaint and asserted, among other defenses, that all of Beard's claims were barred by §§ 25-5-52 and 25-5-53, Ala.Code 1975, the so-called "exclusivity" provisions of the Act, which generally limit employees and their successors to the remedies set forth in the Act with respect to workplace injuries. The employer also filed a motion for a summary judgment based upon that defense, relying upon certain interrogatory responses and excerpts from the transcript of Seals's criminal trial in support of its position. Beard filed a response in opposition *935 to the employer's motion, offering various deposition transcripts and certain notices and memoranda in support of her position that the exclusivity provisions of the Act did not apply. The parties filed various supplements to their filings, and the trial court ultimately held a hearing on the summary-judgment motion on September 5, 2003, after which the motion was submitted for a decision. An additional supplemental response filed by Beard two weeks after the summary-judgment motion had been submitted, in which she attempted to adduce other evidence in opposition to the motion, was struck by the trial court at the employer's request.
In an order entered on October 6, 2003, the trial court granted the employer's summary-judgment motion, concluding that there was no genuine issue of material fact and that all of Beard's claims were barred by the exclusivity provisions of the Act. The trial court further directed the entry of a final judgment pursuant to Rule 54(b), Ala. R. Civ. P. Beard appeals.
"A motion for summary judgment tests the sufficiency of the evidence. Such a motion is to be granted when the trial court determines that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The moving party bears the burden of negating the existence of a genuine issue of material fact. Furthermore, when a motion for summary judgment is made and supported as provided in Rule 56, [Ala. R. Civ. P.,] the nonmovant may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Proof by substantial evidence is required."
Sizemore v. Owner-Operator Indep. Drivers Ass'n, 671 So.2d 674, 675 (Ala.Civ.App. 1995) (citations omitted).
We now consider the parties' arguments regarding Beard's ability to sue the employer in tort. Section 25-5-52, Ala. Code 1975, provides that neither an employee nor an employee's successor in interest has a right to seek compensation or damages, other than in an action under the Act, "for an injury or death occasioned by an accident or occupational disease proximately resulting from and while engaged in the actual performance of the duties of his or her employment and from a cause originating in such employment or determination thereof." Similarly, § 25-5-53, Ala.Code 1975, states that the rights and remedies set forth in the Act "exclude all other rights and remedies of the employee, his or her personal representative, parent, dependent, or next of kin, at common law, by statute, or otherwise" with respect to "injury, loss of services, or death"; moreover, except as provided in the Act, "no employer shall be held civilly liable for personal injury to or death of the employer's employee" who suffers an injury or dies because of "an accident or . . . an occupational disease while engaged in the service or business of the employer" if "the cause of [such] accident or occupational disease originates in the employment." Id. Taken together, §§ 25-5-52 and 25-5-53, as our Supreme Court noted in Ex parte Shelby County Health Care Authority, 850 So.2d 332, 338 (Ala.2002), provide that "the Act is the exclusive remedy when an employee is injured in an accident proximately resulting from, and that occurred while the employee was engaged in, the actual performance of the duties of his or her employment" (emphasis added).
In addition to §§ 25-5-52 and 25-5-53, § 25-5-14, which was enacted in 1985, provides further support for the principle of exclusivity. In that statute, the legislature stated that its intent was "to provide complete immunity to employers" (emphasis *936 added) and that that immunity is "an essential aspect of the workers' compensation scheme."
Despite those statutes, there are, of course, certain limited cases to which the Act's exclusive-remedy provisions have been held not to apply. For example, if an employee is injured, but not as a result of an accident arising out of and in the course of his or her employment, the Act is without application. Thus, an employer's "intentional tortious conduct, such as intentional fraud, `committed beyond the bounds of the employer's proper role,' is actionable notwithstanding the exclusivity provisions of the [Act]." Hobbs v. Alabama Power Co., 775 So.2d 783, 786 (Ala.2000) (quoting Lowman v. Piedmont Executive Shirt Mfg. Co., 547 So.2d 90, 95 (Ala. 1989)). Similarly, if an employer's wrongful conduct, rather than injuring an employee, injures an employee's unborn child, a personal-injury action brought by or on behalf of the child is not barred by the exclusivity provisions of the Act. Namislo v. Akzo Chems., Inc., 620 So.2d 573, 575 (Ala.1993). However, where a workplace injury to an employee arises from an accident as defined in the Act, i.e., "an unexpected or unforeseen event, happening suddenly and violently, with or without human fault, and producing at the time injury to the physical structure of the body or damage to an artificial member of the body by accidental means," § 25-5-1(7), Ala.Code 1975, the Act's exclusivity provisions apply, and merely alleging intentional or willful conduct cannot surmount those provisions.
In Ex parte Progress Rail Services Corp., 869 So.2d 459 (Ala.2003), the widower and children of an employee of a scrap-metal company who was killed in a workplace explosion brought a civil action against the employer and other defendants, seeking damages from that employer based upon allegations of an intentional and/or a willful violation of a duty to provide the employee with a safe place to work and an intentional and willful failure to hire, train, and/or supervise the employee's coworkers. The defendant employer in Progress Rail moved to dismiss the complaint on the basis of the Act's exclusive-remedy provisions; however, the trial court denied the employer's motion to dismiss the complaint. The Alabama Supreme Court granted the employer's petition for a writ of mandamus and issued a writ directing the trial court to dismiss the employer as a party to the action, determining that the Act barred the tort action notwithstanding the allegations of willful and intentional conduct.
Beard contends that Progress Rail does not control this case, arguing that the employee's death was not caused by an "accident" under the Act and that, therefore, the Act's exclusive-remedy provisions do not apply. We believe that Beard's contention is foreclosed by the reasoning of our Supreme Court in DeArman v. Ingalls Iron Works Co., 258 Ala. 205, 61 So.2d 764 (1952). In DeArman, the personal representative of the estate of an electrocuted welder who worked for one of two corporations sued both corporations in tort, asserting claims that the corporations had wantonly or willfully failed to provide safe working tools to the welder and had wantonly or wilfully failed to warn the welder of the dangers of an electric welding machine. The Supreme Court affirmed the trial court's determination that the complaint failed to state a valid claim, agreeing with the corporations that the claims fell within the scope of the Act. In doing so, the Supreme Court rejected the personal representative's contention that the corporations' alleged knowledge that use of the electrical welding machine was likely to cause the welder's death rendered the *937 death "neither unexpected nor unforeseen." 258 Ala. at 208, 61 So.2d at 766.
The analysis in DeArman of what constitutes an "accidental" injury under the Act is instructive:
"Assuming, as appellant argues, that the death of appellant's intestate was not an unexpected or unforeseen event as concerns the appellees, it is not argued, nor can it be successfully argued, that it was not an unexpected or unforeseen event as regards the appellant's intestate. Nothing more is required to bring the case under the Workmen's Compensation Act than that the harm that appellant's intestate sustained shall be unexpected or unforeseen by him. The test as to whether injury is unexpected and unforeseen so if received on a single occasion occurs `by accident' is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing. What was actually probable, or even inevitable, because of circumstances unknown to the sufferer, is unimportant. Many cases defining `accidental injuries,' accidents, and the like, hold that the unexpected and unforeseen event is one unexpected or unforeseen by the injured employee.
"Stated another way, under the compensation statutes, an accident may be an event not expected or designed by the workman himself although it may have been designed by another, and be the result of wilful, intentional, or designed acts on the part of others. As stated in 71 C.J., Section 328, at page 571:
"`Within the meaning of the statutory word "accident" and the like, as used to indicate when compensation shall be paid, and construed to mean an unlooked-for and untoward event which is not expected or designed, it is the expectation, intention, or design of the workman that is to be regarded; accordingly there may be an "accident" within the meaning of the compensation act where the disability or death of the workman is the result of an event which, although designed by another, was neither expected nor designed by the workman who was its victim. . . .'"
258 Ala. at 208-09, 61 So.2d at 766-67 (emphasis added; citations omitted).
It may have been true, as Beard has argued at length, that the employer knew or should have known that Seals was a threat to his coworkers. However, the employer's actual or imputed knowledge of Seals's alleged violent propensities is immaterial to whether the decedent's death resulted from an "accident" under the Act so as to render the Act's remedies exclusive as to the employer. What is material is whether the decedent intended or expected to be injured by a shot from Seals's pistol. Beard has not adduced substantial evidence[2] that the decedent expected or intended to suffer the fatal injury he sustained while in the line and scope of his employment on the day of his death. In the absence of such evidence (or evidence that an employer intended an employee to be injured or to die, see Hobbs, supra), neither an employee nor an employee's successor in interest can properly invoke a remedy outside the boundaries of the Act *938 with respect to a workplace injury to, or a workplace death of, an employee.
Although not essential to our holding today, we would be remiss in failing to note that our conclusion is consistent with the position taken by the authors of a leading treatise on the law of workers' compensation:
"When the person who intentionally injures the employee is . . . merely a foreman, supervisor or manager, both the legal and moral reasons for permitting a common-law suit against the employer collapse and a majority of modern cases bar a damage suit against the employer. This is all the more true if the assailant does not even hold a supervisory position."
6 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 103.06[1] (2004) (footnotes omitted). The treatise continues:
"A corporation's negligent failure to prevent an assault on the plaintiff employee is clearly within the boundaries of the workers' compensation act, and therefore cannot form the basis for a suit in tort. In the same vein, actions for negligent hiring, negligent supervision, or negligent retention are barred by the exclusivity provision."
Id. at § 103.07 (footnotes omitted).
Because Beard is limited to the remedies provided in the Act with respect to the employer's liability for the decedent's death,[3] and because she has not pursued those remedies, we conclude that the trial court correctly entered a summary judgment in favor of the employer on Beard's claims. Our conclusion renders unnecessary any consideration of whether general tort-law principles pertaining to liability for third-party criminal acts would properly support a claim in tort against the employer (as Beard argues). But see Carroll v. Shoney's, Inc., 775 So.2d 753, 756 (Ala. 2000) (affirming a summary judgment on a wrongful-death claim against a decedent's employer based on general rule that "a person has no duty to protect another from criminal acts of a third person" without addressing potential applicability of the Act).
AFFIRMED.
CRAWLEY and THOMPSON, JJ., concur.
MURDOCK, J., concurs in the result, with writing.
YATES, P.J., dissents, with writing.
MURDOCK, Judge, concurring in the result.
The main opinion includes the following statement:
"Beard has not adduced substantial evidence that the decedent expected or intended to suffer the fatal injury he sustained while in the line and scope of his employment on the day of his death. In the absence of such evidence (or evidence that the employer intended an employee to be injured or to die, see Hobbs, supra), neither an employee nor an employee's successor in interest can properly invoke a remedy outside the boundaries of the [Workers' Compensation] Act with respect to a workplace injury to, or a workplace death of, an employee."
908 So.2d at 937-38 (footnote omitted). I would not word this statement in this way. Among other things, it appears to carry with it a negative, and unusual, implication *939 that, if the evidence does support a finding that an employee expected or intended to suffer a fatal injury, he or she could properly invoke a remedy outside the boundaries of the Workers' Compensation Act.
I believe the more appropriate way to make the point that I believe needs to be made would be to state as follows:
"There is no genuine issue as to the fact that the decedent in this case did not expect or intend to suffer a fatal injury on the day of his death. Accordingly, and absent evidence that the employer actually intended the employee to be injured or to die, cf. Hobbs, supra, the employee's workplace injury is properly considered to be an `accident' within the meaning of the Act."
There is not substantial evidence in the present case indicating that the employer actually intended to injure or cause the death of Christopher Lawrence. I therefore believe the analysis provided in Larson's Workers' Compensation Law, as set out in the main opinion, is particularly apt.
I agree with Presiding Judge Yates that, as the main opinion notes, the "`circumstances surrounding the decedent's death are somewhat uncertain.'" 908 So.2d at 934 (Yates, P.J., dissenting). Although Beard briefly notes near the end of the first argument in her brief on appeal that there may be a disputed fact as to whether the employee's death arose out of his employment, she does not make an argument supported by legal authority to this effect. Instead, her brief focuses upon her arguments that Lawrence's death was foreseeable and that the employer had a duty to protect Lawrence from the criminal act of Seals. Those contentions are addressed in the main opinion.
YATES, Presiding Judge, dissenting.
The main opinion correctly states that "`the [Workers' Compensation] Act is the exclusive remedy when an employee is injured in an accident proximately resulting from, and that occurred while the employee was engaged in, the actual performance of the duties of his or her employment.'" 908 So.2d at 935, quoting Ex parte Shelby County Health Care Authority, 850 So.2d 332, 338 (Ala.2002). After reviewing the evidence in this case, I believe that a question of fact exists as to whether the shooting of Christopher Lawrence by Roderick Seals "proximately resulted" from "the actual performance of the duties of" Lawrence's employment. The main opinion notes that the "circumstances surrounding the decedent's death are somewhat uncertain" and that Lawrence may have been shot because he grabbed Seals. 908 So.2d at 934.
Because all of the elements necessary to make the Act the exclusive remedy for the employee or the employee's successor in interest have not been met in this case, I must respectfully dissent from the main opinion.
NOTES
[1] Seals was found guilty of murder in the shooting death of the decedent. He appealed from the murder conviction, and the Alabama Court of Criminal Appeals affirmed the conviction, without an opinion. Seals v. State (No. CR-02-1161, October 24, 2003), 897 So.2d 1248 (Ala.Crim.App.2003) (table).
[2] Assuming, without deciding, that the trial court erred in striking Beard's supplemental evidentiary submission in opposition to the employer's summary-judgment motion as having been untimely filed, any error in so doing would not have prejudiced Beard because that submission did not demonstrate that the decedent expected or intended to be injured by Seals's firing of his pistol. See Rule 45, Ala. R.App. P. (error without injury will not support reversal).
[3] See, e.g., Ala.Code 1975, § 25-5-60(1)g. (providing that if an employee without dependents dies as a result of, and within three years after, an accident under the Act, the employer shall pay $7,500 to that employee's estate).