PITTMAN, Judge.
This appeal concerns whether a portion of the Alabama Workers’ Compensation Act, Ala.Code 1975, § 25-5-1 et seq. (“the Act”) — namely, the so-called “exclusivity provisions” of the Act appearing at Ala. Code 1975, §§ 25-5-52 and 25-5-53 — bars certain claims in tort that have been asserted by a number of people (“the workers”) [1] who allegedly performed labor at a factory in Dallas County that produces “foam shapes for automobile seat backs, cushions and/or headrests.” Because we conclude that the exclusivity provisions bar those tort claims, we affirm the judgment of the Dallas Circuit Court, made final pursuant to Rule 54(b), Ala. R. Civ. P., dismissing the claims.
The workers initiated this action in the Dallas Circuit Court in December 2008, naming as defendants (a) certain corporate entities, including Renosol Seating, LLC; Renosol Seating Properties, LLC; Reno-sol Corporation; Lear Operations Corporation; and Lear Corporation (collectively, “the corporate defendants”); (b) certain individuals, including David Ash, Pete Ber-nier, Connie Messer, Wayne Savage, Ricky Brown, and Robert Strickland (“the co-employee defendants”); and (c) various fictitiously named parties listed as defendants pursuant to Rule 9(h), Ala. R. Civ. P. The complaint contained five counts: a count seeking damages based upon allegations that all the defendants had “intentionally, willfully, negligently and/or wantonly caused or allowed the [workers] to be subjected and/or exposed to hazardous and/or harmful chemicals, substances and/or conditions” (count I); a count seeking damages based upon allegations that all the defendants had “intentionally and/or willfully failed to provide and/or maintain a safe work place for the [workers]” (count II); a count seeking damages only from the co-employee defendants pursuant to Ala.Code 1975, § 25-5-ll(c), a portion of the Act (count III); a count seeking damages based upon allegations that all the defendants had fraudulently misrepresented or suppressed material facts as to conditions at the factory where the workers had performed labor (count IV); and a claim seeking from the corporate defendants an award of workers’ compensation benefits pursuant to the Act (count V). Although the complaint has been amended on several occasions to add parties, the substance of the five counts of the complaint has remained the same since the initiation of the action; further, each amended complaint has sought a jury trial.[2]
After the original complaint was filed, the co-employee defendants filed an answer averring, among other things, that the Act provided the workers’ exclusive remedy as to the claims against them. All the corporate defendants filed answers to count V of the complaint and moved to dismiss the other counts that applied to them (ie., counts I, II, and IV), specifically invoking the exclusivity provisions as a basis for dismissal. In responding to the motions to dismiss, counsel for the workers expressly conceded that count II was due to be dismissed as to the corporate defendants but opposed the dismissal of counts I and IV. After a hearing, the trial court entered an order dismissing counts I, II, and IV as they applied to the corporate *1270 defendants. The corporate defendants then moved for the entry of a final judgment as to that dismissal order. Before the trial court could hear arguments on the motion, the existence of bankruptcy proceedings involving some of the corporate defendants (and of the applicability of the automatic-stay provisions of 11 U.S.C. § 362) was suggested on the record; that stay was lifted as of November 10, 2009, and the trial court on that date expressly directed the entry of a final judgment as to its earlier dismissal order, pursuant to Rule 54(b), Ala. R. Civ. P.
On December 9, 2009, counsel for the workers timely filed a motion, pursuant to Rule 59, Ala. R. Civ. P., to vacate the final judgment as to the dismissed counts against the corporate defendants; the workers averred, among other things, that the claims remaining in the case were factually intertwined with the dismissed claims so as to require that they proceed together to a judgment and that the exclusivity provisions of the Act did not apply to bar the tort claims asserted against the corporate defendants. The trial court did not expressly rule on the workers’ post-judgment motion by March 19, 2010, the date specified by the parties in their consent to extend the 90-day deadline to rule on the motion as set forth in Rule 59.1, Ala. R. Civ. P.; thus, that motion was denied on that date. The workers timely appealed from the November 10, 2009, judgment; the appeal was transferred to this court pursuant to Ala.Code 1975, § 12-2-7(6).
We first consider whether we may properly exercise appellate jurisdiction as to the appeal based upon the trial court’s Rule 54(b) direction of entry of a final judgment as to its dismissal order.
“ ‘If a trial court certifies a judgment as final pursuant to Rule 54(b), an appeal will generally lie from that judgment.’ The exception to that rule is that [an appellate court] will not consider an appeal from a judgment certified as final under Rule 54(b) if it determines that the trial court exceeded its discretion in concluding that there is ‘no just reason for delay.’ This Court has previously held that a trial court exceeds its discretion in this area when the claim or claims that remain pending in the trial court present issues that are ‘intertwined’ with the issues presented in the claim certified as final pursuant to Rule 54(b).”
Smith v. Slack Alost Dev. Servs. of Alabama, LLC, 32 So.3d 556, 562 (Ala.2009) (citations omitted and emphasis removed).
The workers assail the trial court’s decision to direct the entry of a final judgment on the basis that, they contend, the tort claims dismissed by the trial court are intertwined with the claims that remain pending. However, we conclude that the trial court has acted within its discretion to allow immediate appellate review of its dismissal order. The dismissal of all the tort counts in which the corporate defendants are named, ie., all the claims against those defendants that do not seek benefits under the Act, effectively excises the issues of compensatory and punitive damages from the action as it relates to the corporate defendants, leaving the workers to their compensation remedies under Article 3 of the Act (which are not dependent upon any culpability of the employer, see Ala.Code 1975, § 25-5-51). Further, the dismissal of those claims negates the prospect that the corporate defendants will be required to wait for an available jury docket before a judgment concluding their participation in the action can be entered, and the dismissal greatly narrows the scope of the issues to be litigated between the workers and the corporate defendants. Further, no counterclaim has been assert *1271 ed against the workers that would counsel in favor of simultaneous adjudication, and there is no real likelihood that the trial court will ignore the mandate of this court so as to engender a possibility that consideration of the same issue a second time will be required. See Lighting Fair, Inc. v. Rosenberg, 63 So.3d 1256, 1264 (Ala.2010) (citing federal cases indicating the importance of such factors in determining the propriety of directing the entry of a final judgment pursuant to Rule 54(b)). We thus decline the workers’ invitation to set aside the trial court’s direction of the entry of a final judgment as to its dismissal order.
We now turn to the merits of the appeal. Count I and count IV were the sole tort counts asserted against the corporate defendants as of the date of the trial court’s dismissal order as to which counsel for the workers had not conceded the propriety of dismissal in the trial court.[3] Both counts incorporated certain factual averments of the complaint by reference, including an averment that the workers “are and/or were employed by the [corporate defendants] and/or fictitious party defendants” at a factory in Dallas County. Count I alleged that the corporate defendants, the co-employee defendants, “and/ or” the fictitiously named defendants had “intentionally, willfully, negligently and/or wantonly caused or allowed the [workers] to be subjected and/or exposed to hazardous and/or harmful chemicals, substances and/or conditions.” Count IV alleged that the corporate defendants, the co-employee defendants, “and/or” the fictitiously named defendants had fraudulently made certain misrepresentations or had suppressed certain facts touching and concerning the safety of the factory and the chemicals used therein. The thrust of counts I and IV, then, is to allege that the co-employee defendants and/or the workers’ “employer” or “employers” — whether they be the corporate defendants, the co-employee defendants, or the fictitiously named defendants — acted in such a way as to cause the workers various bodily injuries, including “injuries to their head[s], eyes, nose[s], respiratory systems, chest[s] and/or ... an increase in the risk and/or likelihood of other adverse conditions,” as well as incidental and consequential damage. The workers’ use of alternative pleading language in their complaint thus assumes that they will be able to prove that one or more members of the class of defendants that includes the corporate defendants and the fictitiously named defendants (ie., the workers’ employers as opposed to the co-employee defendants) breached duties owed to the workers in the course of the workers’ labor at the factory.
Article 3 of the Act, subject to certain exceptions involving smaller employing entities that are exempted by statute (see generally Ala.Code 1975, § 25-5-50), mandates that “compensation ... be paid by the employer ... in every case of personal injury or death of his or her employee caused by an accident arising out of and in the course of his or her employment, without regard to any question of negligence.” Ala.Code 1975, § 25-5-51. Similarly, pursuant to Article 4 of the Act, disablement and death of employees from occupational diseases are treated by the Act as stemming from accidental injuries and are similarly compensable. See AIa.Code 1975, § 25-5-111. However, the right to compensation afforded to employees under the *1272 Act is, by statute, exclusive. The Act provides:
“Except as provided in this chapter [ie., the Act], no employee of any employer subject to [the Act], nor the personal representative, surviving spouse, or next of kin of the employee shall have a right to any other method, form, or amount of compensation or damages for an injury or death occasioned by an accident or occupational disease proximately resulting from and while engaged in the actual performance of the duties of his or her employment and from a cause originating in such employment or determination thereof.”
Ala.Code 1975, § 25-5-52. Similarly, Ala. Code 1975, § 25-5-53, provides, in pertinent part:
“The rights and remedies granted in [the Act] to an employee shall exclude all other rights and remedies of the employee, his or her personal representative, parent, dependent, or next of kin, at common law, by statute, or otherwise on account of injury, loss of services, or death. Except as provided in [the Act], no employer shall be held civilly liable for personal injury to or death of the employer’s employee, for purposes of [the Act], whose injury or death is due to an accident or to an occupational disease while engaged in the service or business of the employer, the cause of which accident or occupational disease originates in the employment.”
We have had the opportunity to consider the scope of those exclusivity provisions previously. In Beard v. Mobile Press Register, Inc., 908 So.2d 932 (Ala.Civ.App.2004), we reviewed a judgment in favor of an employer in an action brought by the personal representative of an employee who had been murdered by a co-employee who had brought a pistol to work; in that action, the personal representative had
sought to recover damages on a number of tort-based theories of liability, including failure to supervise or discipline the co-employee, failure to instruct other employees to report threatening conduct on the part of the co-employee, and failure to provide the employee a safe workplace. We agreed with the trial court that the exclusivity provisions barred the personal representative’s tort claims against the employer, noting that, from the standpoint of the employee, the workplace shooting death was not intended or expected and, therefore, amounted to an “accident” under the Act. Id. at 937 (citing and quoting DeArman v. Ingalls Iron Works Co., 258 Ala. 205, 208-09, 61 So.2d 764, 766-67 (1952)). In Beard, 908 So.2d at 936, we acknowledged that the exclusivity provisions of the Act had been held not to apply in “certain limited cases,” such as (1) to “an employer’s ‘intentional tortious conduct, such as intentional fraud, “committed beyond the bounds of the employer’s proper role” ’ ” (quoting Hobbs v. Alabama Power Co., 775 So.2d 783, 786 (Ala.2000), quoting in turn Lowman v. Piedmont Exec. Shirt Mfg. Co., 547 So.2d 90, 95 (Ala.1989)), and (2) to “an employer’s wrongful conduct [that] ... injures an employee’s unborn child” (citing Namislo v. Akzo Chems., Inc., 620 So.2d 573, 575 (Ala.1993)).
The workers in this case seek to rely upon the first exception to the exclusivity provisions that we identified in Beard as having been carved out by Lowman and its progeny: that exception pertaining to “ ‘intentional tortious conduct ... “committed beyond the bounds of the employer’s proper role.” ’ ” The workers’ brief to this court uses the shorthand expression “intentional tort exception” to refer to the principle espoused by the Lowman line of cases that we referred to in Beard. They further urge this court to classify their *1273 claims, to the extent that the workers have alleged intentional conduct, as falling outside the scope of the exclusivity provisions of the Act.
However, and although this court has previously cited Lowman for the proposition that “claims alleging intentional tor-tious conduct are not barred by the exclusivity provision[s]” of the Act, Hiatt v. Standard Furniture Mfg. Co., 741 So.2d 407, 412 (Ala.Civ.App.1998), the scope of Lowman has been significantly circumscribed by a later decision, Ex parte Progress Rail Servs. Corp., 869 So.2d 459 (Ala.2003). Because the appellant in Beard had argued that Progress Rail was distinguishable, we briefly summarized the holding of Progress Rail in our opinion:
“In [Progress Rail ], the widower and children of an employee of a scrap-metal company who was killed in a workplace explosion brought a civil action against the employer and other defendants, seeking damages from that employer based upon allegations of an intentional and/or a willful violation of a duty to provide the employee with a safe place to work and an intentional and willful failure to hire, train, and/or supervise the employee’s coworkers. The defendant employer in Progress Rail moved to dismiss the complaint on the basis of the Act’s exclusive-remedy provisions; however, the trial court denied the employer’s motion to dismiss the complaint. The Alabama Supreme Court granted the employer’s petition for a writ of mandamus and issued a writ directing the trial court to dismiss the employer as a party to the action, determining that the Act barred the tort action notwithstanding the allegations of willful and intentional conduct.”
908 So.2d at 936. Because the appellant in Beard focused more upon the issue of the accidental nature of the employee’s death in that case, it was unnecessary in Beard to determine the precise extent to which Progress Rail affects the continuing viability of Lowman and its progeny. However, both the parties and amici curiae who have filed briefs supporting the corporate defendants’ position have argued the point at length, and we will address that question as well.
Progress Rail, as we have noted, stands for the proposition that when an employee’s claim is otherwise within the scope of the Act, the exclusivity provisions cannot be avoided by the mere expedient of alleging that the conduct of the employer giving rise to the claim was willful or intentional. In recognizing that principle, the opinion in Progress Rail distinguished Lowman, which was described as involving an employee’s claims of fraud, conspiracy to defraud, and intentional infliction of emotional distress against her employer that “[arose] out of ... refusing to allow the injured employee to seek workers’ compensation benefits for her on-the-job injury” and attempting to coerce that employee to “ ‘file her disability claim as for an off-the-job injury.’” Progress Rail, 869 So.2d at 469 (quoting Lowman, 547 So.2d at 92). Progress Rail makes clear that, regardless of the holding in Lowman that the exclusivity provisions do not apply to claims alleging “ ‘intentional tortious conduct ... committed beyond the bounds of the employer’s proper role,’ ” they do apply to bar tort claims arising from “conduct committed within the bounds of the employer’s proper role.” 869 So.2d at 470 (emphasis in Progress Rail).
Progress Rail, then, compels judicial attention to the objective nature of the particular transaction or occurrence giving rise to the injury, and it discounts the effect of subjective characterizations of the employer’s contemporaneous state of mind. Accord Harris v. Beaulieu Group, LLC, *1274 394 F.Supp.2d 1348, 1356 (M.D.Ala.2005) (“When the employee’s injury is covered under the Act, the Act does not allow the employee to circumvent its provisions and seek a tort remedy based on an assertion that the employer’s conduct was willful.”). When it can objectively be ascertained that an injury “arisfes] out of and in the course of ... employment” (§ 25-5-50) and that the injury is not expected or intended on the employee’s part, pleading or proof of an intent on the part of the employer to injure will not remove the case from the scope of the Act and its exclusivity provisions. As Judge Moore correctly surmised in his treatise on workers’ compensation law, after Progress Rail, “it should be assumed that Alabama law no longer allows intentional fraud actions against employers,” at least when such a fraud claim is “premised on a covered injury caused by the willful or intentional conduct of the employer.” 2 Terry A. Moore, Alabama Workers’ Compensation § 20:18 (West 2010 Supp.).
In this case, at bottom, the workers have alleged that their injuries stem from conduct, statements, or silence of the corporate defendants as to workplace conditions. Such conduct, even if proved, would fall within the employer’s role under the Act: to “employf] another to perform a service” in exchange for wages. Ala.Code 1975, § 25-5-1(4). The workers in this case allege that they have suffered bodily injuries by virtue of exposure to hazardous conditions in the workplace, not that they have been injured by means of coercion occurring outside the scope of employment (as was alleged to have occurred in Low-man, in which the gravamen of the fraud claim stemmed from postinjury coercive practices). Neither do we view Painter v. McWane Cast Iron Pipe Co., 987 So.2d 522 (Ala.2007), and Soti v. Lowe’s Home Ctrs., Inc., 906 So.2d 916 (Ala.2005), as compelling a contrary conclusion to that reached by the trial court and this court; both opinions simply recognize the principle that not all fraudulent conduct that could conceivably be alleged to have been committed by an employer will fall within the exclusivity provisions. Properly understood, the gloss placed upon Lowman and its progeny by cases that broadly state that intentional-tort claims against employers fall outside the scope of the Act are best viewed through the lens that Progress Rail provides, and we do not hesitate to conclude that the workers’ claims against the corporate defendants in this case fall within the scope of the Act and its exclusivity provisions.
Based upon the foregoing facts and authorities, we affirm the judgment of the trial court.
AFFIRMED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.

. At the time that the Dallas Circuit Court entered its order dismissing the workers’ tort claims in July 2009, 90 workers had appeared as plaintiffs.

. The corporate defendants assert in their brief to this court that counsel for the workers has filed four other actions in three counties containing similar claims against other corporate entities; however, the record is silent as to that matter.

. We note, in passing, that the workers’ fourth amended complaint was "simply too late” to the extent that it attempted to reassert counts I, II, and IV against the corporate defendants after the trial court had directed the entry of a final judgment as to the dismissal of those counts. Friddle v. Raymond, 575 So.2d 1038, 1040 (Ala.1991).